## AVERY *v.* ALABAMA.

No. 124.   Argued December 7, 1939.—Decided January 2, 1940.

---

[18] *Stoll* v. *Gottlieb, supra.*
[19] *Chicot County Drainage District* v. *Baxter State Bank, supra.*

*Messrs. L. S. Moore* and *John Foshee,* with whom *Mr. Edward H. Saunders* was on the brief, for petitioner.

*Mr. Thomas S. Lawson,* Attorney General of Alabama, with whom *Mr. William H. Loeb,* Assistant Attorney General, was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was convicted of murder in the Circuit Court of Bibb County, Alabama; he was sentenced to death and the State Supreme Court affirmed.[1] The sole question presented is whether in violation of the Fourteenth Amendment "petitioner was denied the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial," because after competent counsel were duly appointed their motion for continuance was denied. Vigilant concern for the maintenance of the constitutional right of an accused to assistance of counsel led us to grant certiorari.[2]

Had petitioner been denied any representation of counsel at all, such a clear violation of the Fourteenth Amendment's guarantee of assistance of counsel would have required reversal of his conviction.[3] But counsel were duly appointed for petitioner by the trial court as

---

[1] 237 Ala. 616; 188 So. 391.

[2] *Post,* p. 540.

[3] *Powell* v. *Alabama,* 287 U. S. 45; see *Brown* v. *Mississippi,* 297 U. S. 278, 286.

required both by Alabama law[4] and the Fourteenth Amendment.

Since the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel. In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in the light of facts then presented and conditions then existing. Disposition of a request for continuance is of this nature and is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.[5]

But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel.[6] The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment.

In determining whether petitioner has been denied his constitutional right to assistance of counsel, we must remember that the Fourteenth Amendment does not limit the power of the States to try and deal with crimes committed within their borders,[7] and was not intended to bring to the test of a decision of this Court every ruling

---

[4] Code of Ala., 1923, § 5567.

[5] *Franklin* v. *South Carolina*, 218 U. S. 161, 168; *Isaacs* v. *United States*, 159 U. S. 487, 489; see *Minder* v. *Georgia*, 183 U. S. 559, 561.

[6] Cf. *Powell* v. *Alabama, supra; Moore* v. *Dempsey*, 261 U. S. 86, 91.

[7] *Leeper* v. *Texas*, 139 U. S. 462, 467–8; *Ughbanks* v. *Armstrong*, 208 U. S. 481, 487; *Minder* v. *Georgia, supra*, 562.

made in the course of a state trial.[8]   Consistently with
the preservation of constitutional balance between state
and federal sovereignty, this Court must respect and is
reluctant to interfere with the states' determination of
local social policy.[9]   But where denial of the constitu-
tional right to assistance of counsel is asserted, its peculiar
sacredness [10] demands that we scrupulously review the
record.[11]

The record shows—

Petitioner was convicted on an indictment filed in the
Bibb County Circuit Court for murder alleged to have
occurred in 1932.  He was found and arrested in Pitts-
burgh, Pennsylvania, shortly before March 21, 1938.   On
that date, Monday, he was arraigned at a regular term of
the Court; two practicing attorneys of the local bar were
appointed to defend him; pleas of not guilty and not
guilty by reason of insanity were entered and the presid-
ing judge set his trial for Wednesday, March 23.   The
case was not reached Wednesday, but was called Thurs-
day, the 24th, at which time his attorneys filed a motion
for continuance, on the ground that they had not had
sufficient time and opportunity since their appointment
to investigate and prepare his defense.   Affidavits of both
attorneys accompanied the motion.

One attorney's affidavit alleged that he had not had
time to investigate and prepare the defense because he
had been actually engaged in another trial from the time
of his appointment at 2 P. M., Monday, until 9 P. M.

---

[8] Cf. *Davidson* v. *New Orleans,* 96 U. S. 97, 104; *Walker* v. *Sau-vinet,* 92 U. S. 90, 92.

[9] *Green* v. *Frazier,* 253 U. S. 233, 239, 240, 242; *Nebbia* v. *New York,* 291 U. S. 502, 537–8.

[10] Cf. *Lewis* v. *United States,* 146 U. S. 370, 374, 375.

[11] *Norris* v. *Alabama,* 294 U. S. 587, 590; *Pierre* v. *Louisiana,* 306 U. S. 354, 358.

that evening; his presence had.been required in the court. room on Tuesday, March 22, due to employment in other cases set, but not actually tried; he had been detained in court Wednesday, March 23, waiting for petitioner's case to be called; but after his appointment he had talked with petitioner and "had serious doubts as to his sanity."

The affidavit by the other attorney stated that he too had not had proper time and opportunity to investigate petitioner's case because of his employment in other pending cases, some of which were not disposed of until Tuesday at 4:30 P. M.

No ruling on the motion for continuance appears in the record, but on Thursday, the 24th, the trial proceeded before a jury.

The foster parents of the person whose murder was charged and another witness testified that on the day of the killing, deceased, petitioner's wife from whom he was then separated, had started to a nearby neighbor's house to get a washtub when petitioner approached her with a pistol in his right hand; words ensued; she turned and ran and he shot her twice in the back; she fell and he shot her three more times. Petitioner denied that these witnesses were at the time in a position to see what occurred. Admitting he had come some three miles from his home to see his wife, he insisted that he had no pistol but that when he spoke to her she had a bucket of water and something else; they quarrelled; she then drew a pistol from under her sweater and he "got to tussling with her over the pistol, trying to take it away from her"; "shot her, behind the shoulder, and through the back, tussling with her," and then ran away. There is no suggestion in the record that there were any witnesses to the killing other than those who testified. The plea of insanity apparently was withdrawn.[12]

---

[12] The opinion of the Supreme Court of Alabama notes: "Counsel first interposed a plea of not guilty, and another of not guilty by reason of insanity. But upon the trial withdrew the latter plea."

The jury returned a verdict of guilty with the death penalty. On the same day, the 24th, petitioner's counsel moved for a new trial, setting up error in the failure to grant the requested continuance. This motion for new trial was continued from time to time until June 30. In the interim, a third attorney had been employed by petitioner's sister, and on June 30, petitioner's three lawyers filed an amendment to the motion for new trial, specifically setting out that the denial of a continuance had deprived petitioner of the equal protection of the laws and due process of law guaranteed by the Fourteenth Amendment, by denying him "the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial."

When the motion for new trial was heard the only witnesses were petitioner's three attorneys. The third attorney, employed by petitioner's sister, testified only that he had been employed after the trial and verdict. The two attorneys who had represented petitioner at the trial substantially repeated what they had set out in their original affidavits. In some detail they testified that: they had conferred with petitioner after their appointment on Monday, March 21, but he gave them no helpful information available as a defense or names of any witnesses; between their appointment and the trial they made inquiries of people who lived in the community in which the petitioner had lived prior to the crime with which he was charged and in which the killing occurred and none of those questioned, including a brother of petitioner, could offer information or assistance helpful to the defense; they (the attorneys) had not prior to the trial conferred with local doctors, of whom there were four, as to petitioner's mental condition, had neither summoned any medical experts or other witnesses nor asked for compulsory process guaranteed an accused by the Alabama Constitution, Art. 1, § 6. And in response to inquiries

made by the trial judge they stated that they had not made any request for leave of absence from the court to make further inquiry or investigation.

The motion for new trial was overruled.

Upon appeal, the Alabama Supreme Court gave full consideration to the motion for continuance although no ruling upon it was contained in the record and concluded that the trial court had not abused its discretion in failing to continue the case.[13]

Under the particular circumstances appearing in this record, we do not think petitioner has been denied the benefit of assistance of counsel guaranteed to him by the Fourteenth Amendment. His appointed counsel, as the Supreme Court of Alabama recognized, have performed their "full duty intelligently and well." Not only did they present petitioner's defense in the trial court, but in conjunction with counsel later employed, they carried an appeal to the State Supreme Court, and then brought the matter here for our review. Their appointment and the representation rendered under it were not mere formalities, but petitioner's counsel have—as was their solemn duty—contested every step of the way leading to final disposition of the case. Petitioner has thus been afforded the assistance of zealous and earnest counsel from arraignment to final argument in this Court.

The offense for which petitioner was convicted occurred in a County largely rural. The County seat, where court was held, has a population of less than a thousand.[14] Indictments in the Bibb County Circuit Court, as in most rural Counties throughout the Nation, are most frequently returned and trials had during fixed terms or sessions of

[13] *Avery* v. *Alabama, supra.*
[14] Vol. I, Fifteenth Census of the United States, 1930.

court.[15]   And these rural "Court Weeks" traditionally bring grand and petit jurors, witnesses, interested per-

---

[15] The first Constitution of Alabama (1819), Art. V, § 7, provided for the holding of a circuit court at least twice a year in each county, and this provision continues in the present constitution, Const. of Ala. (1901) Art. VI, § 144. While in recognition of modern social needs (see Pound, Criminal Justice in America, 1930, pp. 152, 88, 150, 163, 164, 178, 183, 189, 190) circuit courts now, by statute, entertain causes at substantially all times (Code, 1923, § 6667) the holding of formal court at specific terms or sessions is emphasized in the requirement that each cause be called at least twice a year and as often as is necessary to secure prompt trials. (*Id.*, § 6668). Cf. Ala. Civ. Code, 1907, c. 62, Art. I, § 3234, specifically providing for holding of circuit court in Bibb County on the first Monday before the last Monday in February and August of each year. In general, the practice in Alabama accords with that in all sections of the country, e. g., see Compiled Laws of Colorado, 1921, § 5656, *et seq.*, fixing specific terms of district courts, and § 5734–5766, fixing specific dates of county court terms; Idaho Code Ann. (1932) 1–706, *et seq.*, requiring at least two terms each year for the district court in each county, to be fixed by court order; Burns Indiana Stat. Ann. (1933) 4–332, *et seq.*, fixing specific terms of circuit courts, 4–407 *et seq.*, and 4–607, fixing specific terms of superior courts; Rev. Stat. of Maine (1930), c. 91, § 21, p. 1264, fixing specific trial terms for superior courts; Mich. Stat. Ann. (Callaghan, 1938) § 27.546, *et seq.*, providing for at least four terms of circuit court in each county organized for judicial purposes, at fixed times subject to change by court order (§ 27.547); Cahill's Consol. Laws of New York (1930), c. 31, § 84, providing that special and trial terms of supreme court be designated by the appellate division (see also § 150) and requiring that at least one special term and two trial terms must be held in each county annually, § 148; Rev. Stat. of Utah (1933), 20–3–6, 20–3–9, requiring at least three terms during each year for the district court at each county seat, at times to be fixed by the respective district judges; Public Laws of Vermont (1933), § 1374, p. 296, fixing stated terms for holding county courts. In Pennsylvania, courts of quarter sessions, "of oyer and terminer and jail delivery shall be holden four times, annually, in every county." 17 Purdon's Penn. Stat., §§ 331, 351, 371.

sons and spectators from every part of the County into the County seat for court.[16] Unlike metropolitan centers, people in these rural Counties know each other, and information concerning witnesses and events is more widespread and more generally known than in large cities. Because this was so, petitioner's attorneys were able to make the inquiries during Court Week at the County seat, to which they testified, and that they apparently withdrew the plea of insanity after this inquiry is significant. That the examination and preparation of the case, in the time permitted by the trial judge, had been adequate for counsel to exhaust its every angle is illuminated by the absence of any indication, on the motion and hearing for new trial, that they could have done more had additional time been granted.

---

[16] The system of circuit court terms continues today characteristics traceable to the original English Assizes. While financial and administrative matters have been dropped from the business historically committed to justices on Eyre and later to judges of assize from the time of Henry II, our rural County Circuit courts still bear the earmarks of a "general review of the whole administration of the country." I Stephen's, "His. of the Cri. Law of Eng." (London), pp. 101, 106, 111. See, II Enc. of Soc. Sci., 283, 284, IV, 522. And the practice of promptly trying at any term all the then accused finds its historical roots in the commissions of gaol-delivery oyer and terminer of judges on Circuit or "Assize." I Stephen, *supra*, p. 105, *et seq*. These judges were empowered "to try every prisoner in the gaol, committed for any offense whatsoever." They proceeded upon prior indictments "as well as upon indictments taken before themselves." Stubb's "Crown Circuit" (Dublin), 2, 5, 7, 9, 10. "And therefore it hath never been a question, but that the justices of gaol-delivery may take an indictment, try, and give judgment the same day." 2 Hale's "Pleas of the Crown" (1st Amer. ed.), 33. The Sheriff was commanded to see that the prisoners "together with their attachments, indictmenti, and all other muniments any ways concerning those prisoners . . . [be present and that] all they, who will prosecute against those prisoners, be then and there to prosecute against them, as shall be just." Stubbs, *supra*, 4, 5. See 1 Holdsworth's "History of English Law" (1927), pp. 49-51, 264 *et seq*.

Under the circumstances of this case we cannot say that the trial judge, who concluded a fairly conducted trial by carefully safeguarding petitioner's rights in a clear and fair charge, deprived petitioner of his constitutional right to assistance of counsel. The Supreme Court of Alabama having found that petitioner was afforded that right, its judgment is

*Affirmed.*