TomÁs LÓpez de Victoria, Petitioner and Appellant, *v.* Sixto M. Saldaña, Warden of the Insular Penitentiary, Respondent and Appellee.

No. 8514. Argued April 14, 1942.—Decided April 24, 1942.

*A. Casanova Prats* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an appeal from a judgment rendered by the District Court of San Juan in a *habeas corpus* proceeding refusing to order the discharge of Tomás López de Victoria, who, upon being convicted of murder, was sentenced to life imprisonment by the District Court of Ponce.

The appellant prisoner maintains that the District Court of San Juan erred in holding that the District Court of Ponce had acted with jurisdiction at the trial, and hence, in denying the petition for *habeas corpus.*

The alleged lack of jurisdiction is based on appellant's claim that he had been denied the due assistance of counsel. Of course, if such a claim should turn out to be well-founded, we would be compelled to acknowledge that appellant is right and to reverse the judgment appealed from. *Johnson* v. *Zerbst,* 304 U. S. 458; *Ex parte Hernández Laureano,* 54 P.R.R. 396; *Powell* v. *Alabama,* 287 U. S. 45; *People* v. *Muriel,* 57 P.R.R. 896; *Berríos* v. *Saldaña,* 59 P.R.R. 895, wherein citation is made of the case of *Glasser* v. *United States,* decided by the Federal Supreme Court on January 19, 1942.

In order to decide properly this appeal, we must examine the evidence in regard to the assistance of counsel and weigh the same in the light of reason and of the adjudicated cases.

██ The sentence which the petitioner-appellant is now serving in the penitentiary was imposed by the District Court of Ponce, on September 28, 1938. The petitioner had been prosecuted jointly with Casimiro Berenguer, Elifaz Escobar, Santiago González, Vicente Morciglio, Leocadio López, Juan Pietri, Guillermo Larrogaiti and Prudencio Se· garra, for an attempt to murder Blanton Winship, Governor of Puerto Rico, and for murder committed on July 25, 1938, on the person of Luis A. Irizarry, Colonel of the National Guard, who stood near the Governor while reviewing a pa· rade held on that day in Ponce in commemoration of the landing of the United States Troops in Puerto Rico.

The defendant requested and obtained a separate trial, and after such trial had been held, the jury brought in a verdict finding him guilty of murder in the first degree. Thereupon, the court sentenced him to life imprisonment. He then appealed to this court and subsequently abandoned his appeal, whereupon the judgment became final (*firme*).

At this stage, in January of the current year, the prisoner filed, in the District Court of San Juan, a petition for *habeas corpus*. After the writ had been issued the body of the petitioner was produced in court by his custodian, and the proper hearing was held. On February 9, 1942, the court rendered the judgment appealed from, refusing to order the discharge of the prisoner. Said judgment is based on a lengthy statement of the case and opinion which forms part of the record and contains the following finding:

"The facts proved in the present case show beyond doubt, that the petitioner herein was at all times assisted by counsel, and this being so, neither his constitutional rights, nor § 141 of the Code of Criminal Procedure of Puerto Rico, nor any other law has been at all violated."

The transcript of the evidence introduced in the *habeas corpus* proceeding has been sent up to this court. The petitioner testified as a witness. He stated that the trial of this case was commenced at Ponce on September 19, 1938,

and that he was represented by Attorney Toro Nazario, who moved for a continuance on the ground that he had not had sufficient time to prepare a defense. The witness had not previously conferred with his attorney, nor had explained to the latter the theory of his defense. He had not communicated either with the other participating attorney, Edelmiro Huertas. When his case was called the trial of his codefendant, Elifaz Escobar, had already been held. He had not summoned his witnesses. It seemed to him that he had received the notice of trial two or three days previously. He was surrounded by a hostile atmosphere. The Ponce attorneys were unwilling to take up any of these cases. He preferred a Nationalist attorney. Five attorneys were appointed to represent him. The defendants conferred among themselves and concluded that they should wait until a case was tried so as to observe the result thereof. He never agreed to be represented by the five attorneys who had been appointed, and then Toro Nazario, a Nationalist, took up his case. After the latter had taken charge of his defense he conferred with his attorney, who told him that he was ready to have the case submitted without any testimony. And he answered that there were witnesses. Two days after the trial had commenced, his sister gave Toro Nazario a list of his witnesses who were summoned and testified.

Attorney Toro Nazario then took the stand. He stated that he assumed the defense of López de Victoria on the 19th of September at the commencement of the trial without preparing the same with the accused or without talking with him regarding his witnesses or his theory, and that he called the attention of the court to the fact that he was not ready for the trial of the case. "I was required as a condition to state that I was prepared. As a lawyer it was my belief then that, for my acceptance of the case, no judge had any right to impose such condition on me. Personally I thought I was right, but at that moment, once the judge had stated

his opinion, it was not the province of counsel to enter into a discussion with the judge."

Afterward, answering questions from the court, he stated as follows:

"Q. Had you studied the questions of law involved in the present case, that of López de Victoria, before going to trial? A. No, I had not.—Q. And after going to trial, did you study them? A. I would answer in the affirmative, it being understood that account must be taken of the haste with which the case has proceeded. So that many points, although considered, might actually have been better studied if more time and opportunities had been available; above all such haste must be interpreted in the light of the fact that I was away from my office, away from my notes, away from my books, and away from my regular means of professional communication. . ."

The sworn statements of both the prisoner and his attorney are very extensive and difficult to summarize. We have set down only what has seemed to us more striking for a better understanding of the testimony.

The prisoner then introduced part of the transcript of the evidence in criminal case No. 7419, a murder case, of the District Court of Ponce, pp. 2 to 13. The prosecution submitted pp. 38 and 515 thereof, and the case was finally submitted.

From the latter evidence it appears that when this murder case was called for trial the accused appeared assisted by the attorneys appointed to represent him, and one of them, Agustín Font, made reference to a motion which they had filed subsequent to the trial of Elifaz Escobar, requesting to be relieved from further representation of the other defendants, and that, upon their motion being denied by the court, they had to comply with the order and apply themselves to the utmost to defend López de Victoria, and that while engaged in this task their colleague Toro Nazario called on them to inform them of his decision to assume the defense "of this accused and of the other defendants"; and, after an exchange of views, they agreed to so state in court,

and that Toro Nazario would assume the defense of the accused. He further stated that ever since the Elifaz Escobar case, Toro Nazario had shown interest in intervening, but the appointed counsel did not allow it, and subsequently took the above decision after consultation with defendant Berenguer and with López de Victoria himself.

Toro Nazario then stated as follows: "We desire to state that what my colleague Agustín Font has said is a true and faithful version of everything agreed upon. That all of it is quite true, and in accordance with what has been stipulated."

The district attorney then intervened. After several statements were made, the following finally took place:

"Judge: The incident is closed and the court is going to ask Mr. Toro Nazario a question. Are you prepared to go to trial in the present case?—Atty. Toro Nazario: I would answer that question in a different way now.—Judge: It follows from what has already transpired. I made it very clear that I would not pass upon the motion for the attorneys to withdraw from the case and I will not do so unless I am sure that Attorney Toro Nazario is ready to go to trial in the present case. I made this quite clear, and I have a good memory.

"Atty. Toro Nazario: Such warning prevents me from answering the question and we respectfully take exception for the purpose of the record.—Judge: We must settle this. I am not going to pass upon this question until I am sure that the attorney will answer me categorically. The court demands a clear answer of him, as we are not going to engage in a contest.—Dist. Atty. Pierluisi: We wish to explain, in support of the court's position, that in consenting to the motion of Attorney Font, we did so with the understanding that a continuance of the trial will not be sought. We would have to withdraw our consent if this means a maneuver on the part of Atty. Nazario to obtain a postponement of the trial, if what is sought is to take advantage of this opportunity to file a motion for a continuance that would prejudice the rights of The People of Puerto Rico.

"Atty. Toro Nazario: Under such circumstances, our answer to the court is that we are ready to go to trial. This attorney, however, wishes to state as of record in this proceeding that one of the

functions of an attorney after accepting to become counsel for an accused is that he is fully entitled to apply for a continuance. So that if for the purpose of the record he should move for a continuance of the case, this should not be denied to be in conflict . . . .—Judge: Let every one allege his rights· The attorney files his, motion, the district attorney opposes it, the court passes upon the motion and the attorney is entitled to take exception.—Atty. Toro Nazario: We are ready to go to trial.

" *      *      *      *      *      *      *

"Judge: Is there any answer to the question? Will Attorney Toro Nazario be from now on counsel, the exclusive attorney for the accused in the case before us?—Atty. Toro Nazario: Yes, sir, in all the cases except those in which counsel have already been appointed.—Atty. Font: And except that of Elifaz Escobar, in which we act as counsel for the accused.—Judge: All the above facts having been explained, the court sustains the motion of the four attorneys who intervened in the case against Elifaz Escobar, on the understanding that they will continue as counsel for Elifaz Escobar until final disposition thereof by the Supreme Court. . . · .

" *      *      *      *      *      *      *

"Judge: Then Attorney Toro Nazario continues as counsel for the defendant. The court will ask this question. Are the parties ready to proceed with the trial of this case?—Dist. Atty. Rodríguez Serra: We are ready.—Atty. Toro Nazario: We reproduce the same allegation as in the preceding motion.—Judge: If you have a motion to present, ·please make it.—Atty. Toro Nazario: As we are not ready, and in order to gain time, we respectfully move for a continuance on the ground that the accused has not had sufficient time to prepare his defense.—Dist. Atty. Rodríguez Serra: We object on the following grounds: Atty. Toro Nazario already announced several days ago, by telegram, that he would assume the defense of the accused and had notice that the case had been set for today, all of the witnesses and the jurors having been summoned and the prosecuting attorneys being ready.—Dist. Atty. Pierluisi: The attorney himself stated that he was ready to go to trial.—Judge: The court denies the motion for a continuance and orders that the trial of this case be commenced."

The pages from the transcript submitted as evidence by the district attorney show (p. 38) that Attorney Huertas Zayas acted also as counsel at the trial and examined the ju-

rors, and that Attorney Toro Nazario (p. 515) introduced the evidence for his client, thus:

"Atty. Toro Nazario: Under such circumstances we are going to submit evidence to you which, we hope, will be believed by you and that you will bring in a verdict of acquittal of the defendant.—Judge: Then let the evidence for the defendant be introduced. Let the jury be sworn in.—Atty. Toro Nazario: The witnesses are: Lucila Ralat, Pura López, Nicanora Sotomayor, Juan Alfonso Santiago, Josefa Ríos, Elifaz Escobar and Juan Pietri. We want to say that we are trying to locate another witness who has failed to appear, but for the purpose of notice to the district attorneys, as soon as we are able to locate such witness we will notify the fact immediately.—(The clerk administers the oath to the witnesses.)—Judge: The rule of a single attorney and a single district attorney shall be followed."

In view of the above, it seems to us that the trial court was justified in its conclusion that the prisoner was duly assisted by counsel at the trial.

As we know, the petitioner was charged jointly with other persons with the crime of murder, and the district court appointed five attorneys to represent them. The defendants conferred personally among themselves and decided to move for separate trials so as to observe the proceedings in the first case. The case of Elifaz Escobar came first, and the way in which the appointed counsel fulfilled their duty is commended in the opinion rendered by this court in support of its judgment sustaining the appeal taken from the decision of the District Court of Ponce. *People* v. *Escobar*, 55 P.R.R. 491.

Attorney Toro Nazario, who was at that time vice-president of the Nationalist Party, sought to intervene in the trial of Escobar. The appointed counsel did not permit it. He persisted in his purpose after the conviction of Escobar as to the other defendants especially as to López de Victoria, whereupon the appointed counsel agreed to withdraw provided Attorney Toro Nazario assumed the defense of López de Victoria on the day of trial which had already been

set, all this with the consent of the accused who wished to be represented by an attorney within his party, that is, a Nationalist attorney.

In these circumstances, no judicial mind can be favorably impressed by the statements of Attorney Toro Nazario in the sense of his being unprepared. In the first place, he admitted to be prepared, and in the second place, it was logical that he should be so prepared in view of his status as vice-president of the Nationalist Party, the interest exhibited by him in the defense since the first trial, his insistence in the second, and the way he conducted himself therein, by offering and introducing the evidence available to his client.

Moreover, Edelmiro Huertas, one of the appointed attorneys, who sympathized with the Nationalists, according to the record, continued to aid him especially in the selection of the jury.

Those circumstances are very different from the ones which led the Supreme Court of the United States in the *Powell* case, *supra,* and this court in the *Muriel* and *Berríos* cases, *supra,* to conclude that, notwithstanding counsel had been appointed to represent the defendants, the latter were not actually defended and were tried without the legal assistance guaranteed by law, and that, therefore, the judgments against them were rendered without jurisdiction.

The present case falls rather within the rule laid down by the Federal Supreme Court in *Avery* v. *Alabama,* 308 U. S. 444, in which the petitioner was convicted of murder in the Circuit Court for Ribb County, Alabama, and sentenced to death, which sentence was affirmed by the Supreme Court of Alabama.

The case went, on certiorari, to the Supreme Court of the United States which, in an opinion delivered by Mr. Justice Black, said:

". . . . The sole question presented is whether in violation of the Fourteenth Amendment 'petitioner was denied the right of counsel,

with the accustomed incidents of consultation and opportunity of preparation for trial,' because after competent counsel were duly appointed their motion for continuance was denied.''

It then stated the facts as the same appeared from the record, to wit: That the petitioner had been arrested shortly before March 21, 1938, to answer for a crime committed in 1932; that at that time—March 21, 1938—he was arraigned within the legal term of the court which appointed two attorneys to assist him; that he pleaded not guilty on the ground of insanity, and that the court set the case for trial on March 23, that is, within the next two days, the trial having been actually held on the 24th when the attorneys moved for a continuance on the ground that they had not had sufficient time, nor any opportunity ever since their appointment, to investigate and prepare his defense, and exhibited supporting affidavits.

It went on to consider the record and found that, in spite of the above facts, the attorneys had acted at the trial with zeal and skill, and that the judgment of conviction rendered had been appealed from and affirmed; and it then said:

''Under the particular circumstances appearing in this record we do not think petitioner has been denied the benefit of assistance of counsel guaranteed to him by the Fourteenth Amendment. His appointed counsel, as the Supreme Court of Alabama recognized, have performed their 'full duty intelligently and well.' Not only did they present petitioner's defense in the trial court, but in conjunction with counsel later employed, they carried an appeal to the State Supreme Court, and then brought the matter here for our review. Their appointment and the representation rendered under it were not mere formalities, but petitioner's counsel have—as was their solemn duty—contested every step of the way leading to final disposition of the case. Petitioner has thus been afforded the assistance of zealous and earnest counsel from arraignment to final argument in this Court.''

It had stated before:

''Since the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial,

314

the fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel.''

The Court reached the following conclusion:

"Under the circumstances of this case we cannot say that the trial judge, who concluded a fairly conducted trial by carefully safe-guarding petitioner's rights in a clear and fair charge, deprived petitioner of his constitutional right to assistance of counsel. The Supreme Court of Alabama having found that petitioner was afforded that right its judgment is affirmed." *Avery* v. *Alabama, supra.*

If, after considering the case of Avery, *supra,* we give again our attention to that of López de Victoria, we find that its particulars clearly reveal that the petitioner not only was given the necessary legal assistance, but that he himself chose such assistance. The district court appointed a member of qualified attorneys to represent him from the start, and then accepted the change sought by petitioner himself, and if the court was firm in denying the motion for the continuance, everything shows that it correctly exercised its discretion. Guaranty of defense does not mean that every motion of the accused should be granted even though the conviction exists that said motion is filed in order to unduly delay the administration of justice.

The appeal must be overruled and the judgment appealed from affirmed.