**Leo Daniel LUTON, Appellant,**

v.

**The STATE OF TEXAS, and H. E. Moore, Warden, Appellees.**

No. 19680.

United States Court of Appeals
Fifth Circuit.

June 15, 1962.

William VanDercreek, Thomas L. Ryan, Dallas, Tex., for appellant.

Phil Burleson, Asst. Dist. Atty., Dallas, Tex., for appellees.

Before TUTTLE, Chief Judge, and RIVES and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from an order of the District Court dismissing appellant's petition for habeas corpus. In his petition in the trial court appellant asserted that he was under conviction and sentence of electrocution for murder committed during an armed robbery; that he was denied the effective aid of counsel by the state court in which he was tried; and that he had been denied other constitutional rights in the conduct of the trial or the pretrial proceedings.

Appellant has pursued all state remedies and has been denied his petition for certiorari in the United States Supreme Court, so that he has clearly exhausted all state remedies, as required by 28 U.S.C.A. § 2254.

The District Court had a full hearing on appellant's petition for habeas corpus. Luton himself testified, and in the course of his testimony he freely admitted that he was engaged in an armed robbery at the time the victim of the murder

charge was killed. Luton himself was seriously injured and was held in a hospital bed under guard for some three weeks before he was indicted for the offense. Thereafter, he was brought into court and was asked by the trial judge whether he had counsel to defend him; whereupon he stated that he was anxious to obtain counsel of his own choice but had been unable to do so. The trial court tendered counsel to him but allowed Luton two weeks in which to arrange to find his own lawyer. In order to engage a lawyer, Luton was entirely dependent upon his relatives and friends, as he was himself indigent. On the date set for trial court-appointed counsel requested an additional week's delay again to permit Luton to engage private counsel. Finally, on December 5, 1960, appellant was brought into court for trial and it then became apparent finally that he was unable to procure counsel of his own

choosing, and appointed counsel, three in number, were assigned to his defense.

The thrust of Luton's constitutional claim that he was denied effective aid of counsel is that at no time prior to his appearance in court did his court-appointed lawyer ever visit him or consult with him to assist them in preparing for the defense. Luton testified that court-appointed counsel never consulted with him outside of occasions in open court, and specifically that he did not visit him in the county jail. On the other hand, leading counsel appointed by the court testified categorically on the habeas corpus trial that he had visited Luton "at least twice," in the county jail. Thereupon, on the trial of the habeas corpus case, appellant tendered an affidavit of the chief jailer of the Dallas county jail, seeking to establish the fact that the lawyer did not visit the appellant at the county jail.[1] The

1. This affidavit in relevant part is as follows:

"As Chief Jailer I am custodian of all jail records, which records include among other things, lawyer admission slips. For a number of years it has been a customary administrative rule that before a lawyer is permitted to see a prisoner in our custody, he must obtain an admission slip from the jailer on duty at the front gate, and, after identifying himself, he must endorse thereon the name of the prisoner whom he wishes to visit, his name (the lawyer's), the date and hour he makes the request, and who requested him to visit the prisoner. The lawyer is then permitted access to the jail elevator which is separated from the front gate by another electronically controlled gate and carried to the proper floor where the prisoner is being held. Upon his arrival there, the lawyer is required to present the admission slip to the jailer on duty there before he is permitted to enter a consultation room provided for that purpose.

"These lawyer admission slips are retained customarily by the several jailers through the last day of each month. On the first day of each succeeding month, along with other jail records, they are given to me to preserve as public records. On the second day of each month, the records for the preceding month, including lawyer admission slips are gathered together by me and removed to storage in

cardboard boxes on the eighth floor, where they are retained by this department for approximately five years.

"On or about Friday, April 2, 1962, I was instructed by Sheriff Decker to search the records in storage at that time to determine whether Leo Daniel Luton, a prisoner in custody of this department from October 5, 1960, to December 28, 1961, had been visited by Mr. Ross Hardin, a Dallas lawyer, during a period beginning November 14, 1960, and ending December 8, 1960. Acting on the Sheriff's instructions I assigned Jailer Hunt to supervise this inspection. On April 30, 1962, I was requested again by Mr. Phil Burleson, Assistant District Attorney, Dallas County, Texas, and Mr. Tom Ryan, Attorney for Leo Daniel Luton, to determine the same fact. I then assigned Jailer Willie Smith to supervise the inspection of every box of records in storage wherein the admission slips might be placed.

"I certify that the records on file and in storage in this department predate 1960. I certify further that, as a result of the inspection supervised and conducted by Jailer Hunt and Jailer Smith, the records presently in possession of this department failed to disclose a single visit or request in the form of an admission slip to visit Leo Daniel Luton on the part of Mr. Ross Hardin during the period in question.

affidavit was tendered under the provisions of 28 U.S.C.A. § 2246,[2] which provides that evidence may be taken on such a hearing by affidavit, in the discretion of the Judge. Upon objection to receipt of the affidavit in evidence, the trial court held that it was not admissible. Thereupon, counsel for appellant placed the state prosecuting attorney, representing the State on the habeas corpus trial, on the witness stand and proved by him that he had assisted counsel for Luton in wording the affidavit later signed by the Chief Jailer, but now objected to by him as inadmissible on the habeas corpus proceedings.

Appellant here strongly argues that the very nature of his case is one that places a heavy burden on habeas corpus counsel to carry—that is, that because of a failure of trial counsel adequately to perform his duty to an accused on trial for a capital offense, the accused has been denied his constitutional right to effective aid of counsel. Recognizing, as he does here, that he must prove that much more than that appointed counsel failed to do an effective job as a lawyer, appellant stresses the importance of any evidence which would cast a cloud on the credibility of appointed counsel and weaken his testimony as to his activities and conduct during the state court trial. He relies on Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377, for the proposition that:

"But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel to a sham and nothing more than a formal compliance with the constitution's requirement that an accused be given the assistance of counsel. The constitution's guarantee of assistance of counsel cannot be satisfied by a mere formal appointment."

He also cites Powell v. Alabama, 287 U.S. 45, on page 59, 53 S.Ct. 55, on page 60, 77 L.Ed. 158, where the Supreme Court said:

"A defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense."

The State does not undertake to challenge appellant's claimed right to have such sufficient time to advise with counsel. It meets this attack by proving by counsel that he had actually conferred with the accused during his incarceration, even though his final appointment to act without the aid of counsel of Luton's own choosing, did not come until the day of the trial.

The appellant contends that if the trial court had received the Chief Jailer's affidavit in evidence it would have required a finding by the court that appointed counsel had testified falsely on the habeas corpus trial that he had visited Luton "at least twice" in the county jail. Further, appellant says, if counsel's credibility was thus successfully attacked, then his other testimony as to his activities prior to and during the actual trial, where they were in conflict with

"In this regard, I further certify that while it is customary to have lawyer admission slips filled out it is not always necessary. There have been occasions in the past where I, as Chief Jailer, would permit a lawyer to visit a prisoner at odd hours without an admission slip.

"It is possible also that some of these admission slips could have been lost or misplaced. It is possible, too, that Mr. Hardin could have visited Luton without an admission slip.

"I have known Mr. Ross Hardin for over five years, and I have no independent recollection of permitting Mr. Hardin to visit Luton without an admission slip during the period beginning November 14, 1960, and ending December 8, 1960."

2. "2246. Evidence; depositions; affidavits.
"On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits." 28 U.S.C.A. § 2246.

other evidence, would bear most careful scrutiny.

Although ordinarily it is a matter of discretion for the trial court to determine whether to hear a case of this kind by affidavit, there are here present several factors that seem clearly to us to have required that the trial court receive the affidavit into evidence. The first of these is that the Chief Jailer was at a distance beyond that which could be reached by a subpoena from the habeas corpus court. The second is that, since the state attorney participated with appellant's counsel in wording the affidavit to be presented to the Chief Jailer for his signature, appellant's counsel may well have been justified in assuming that it was not necessary for them to seek a court order to proceed by deposition. In the third place, since the affidavit was from a witness whose position as chief jailer might well be considered as making him at least friendly to the state, the normal need for cross examination of such a witness by opposing counsel would not here be apparent. In addition, while we do not decide the point specifically, the affidavit appears to come close to, if it does not completely satisfy, acceptable proof of the lack of a record. F.R.Civ. P. 44(b), 28 U.S.C.A.; cf. 28 U.S.C.A. § 1739; McCormick & Ray, Texas Law of Evidence § 1293.

We conclude that in this capital case, justice requires that the trial court receive into evidence and give consideration to the affidavit which would raise a substantial question as to the correctness of appointed counsel's testimony that he had visited Luton "at least twice" in the county jail, since the records did not indicate that he had visited Luton on even one occasion.

Upon receipt and consideration of such evidence, the effect to be given to it is, of course, primarily for the trial court.

The judgment of dismissal is hereby reversed and the case is remanded to the trial court in order that it may give consideration to the Chief Jailer's affidavit. The trial court may, of course, proceed further in such manner as may be deemed appropriate, including the receipt of other and further evidence on behalf of either or both parties.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.