**Ivory L. HAISLIP, Petitioner,**

v.

**Raymond ROBERTS, et al., Respondents.**

No. 90–3132–S.

United States District Court,
D. Kansas.

March 6, 1992.

Ivory L. Haislip, pro se.

Susan G. Stanley, Office of the Atty. Gen., Topeka, Kan., for respondents.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at El Dorado Correctional Facility, El Dorado, Kansas, was convicted by a Sedgwick County jury, in 1984, of first degree murder and aggravated battery of a law enforcement officer. In this action, petitioner challenges his conviction and claims: (1) he was denied his constitutionally guaranteed right to effective assistance of counsel; and (2) his constitutionally guaranteed right to due process was violated when the trial court denied him a fair opportunity to consult with an expert in hypnosis.

Having reviewed the record in this matter, the court makes the following findings and order.

### Factual Background

On March 30, 1984, Ivory L. Haislip was convicted of first degree murder in the death of Wichita, Kansas, police officer Paul Garofalo and of aggravated battery on a law enforcement officer in the shooting of Wichita, Kansas, police officer Randy Mulliken. This conviction was the result of petitioner's third trial. The Kansas Supreme Court vacated both prior convictions and each time remanded the case for a new trial. On March 21, 1985, the Kansas Supreme Court affirmed petitioner's third conviction.

In 1987, petitioner filed a post-conviction motion in the trial court, pursuant to K.S.A. 60–1507. Following the denial of that motion, petitioner appealed to the Kansas Court of Appeals which affirmed.

In May, 1990, petitioner commenced this action.

### Discussion

■ To establish his claims of ineffective assistance of counsel, petitioner must meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two part *Strickland* test requires (1) a showing that counsel committed errors so serious that the defendant did not receive the counsel guaranteed by the Sixth Amendment, and (2) a showing that counsel's performance was so deficient that the defendant did not receive a fair trial. Under *Strickland*, the defendant bears the burden to establish both incompetence and prejudice, and there is a presumption that the attorney's conduct comes within the "wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

The crucial issue in each of petitioner's three trials was eyewitness identification of the perpetrator of the crimes. In the first trial, the testimony which clinched petitioner's conviction came when Anthony Ray Martin, later indicted as a co-defendant, identified petitioner as the murderer.

Petitioner filed a motion for a new trial citing newly discovered evidence. Eyewitnesses, who had previously failed to come forward, stated that Martin had committed the crimes. A new trial was granted and Martin was indicted as an aider and abettor. Petitioner and Martin were tried together and both were convicted.

On appeal, the Kansas Supreme Court reversed both convictions and remanded for separate trials. Martin was acquitted. Petitioner was again convicted. Martin,

who invoked his Fifth Amendment privilege against self-incrimination, did not testify at petitioner's trial.

The crux of petitioner's ineffective assistance of counsel argument is that evidence of Martin's guilt was not admitted at petitioner's trial. Specifically, petitioner claims: (1) Martin's hearsay admission of guilt was admissible under the exception against penal interest; (2) Martin's admission of guilt was admissible for the purpose of rehabilitating the credibility of another witness; (3) Martin's admission of guilt was admissible for the purpose of showing Martin's lack of credibility; (4) evidence of other crimes linking Martin to the murder was admissible; and (5) counsel's cross-examination of Martin was constitutionally ineffective in that it failed to show the inconsistencies of Martin's statements.[1]

At trial, an eyewitness testified that she saw Martin shoot the police officer. The witness testified that because she was frightened of Martin, she did not immediately identify Martin to the police. When the witness further explained that Martin had later said to her "You know I did it, don't you?", the prosecutor objected on the basis of hearsay. The objection was sustained and the jury was instructed to disregard the witness's testimony concerning Martin's statement. On appeal, the Kansas Supreme Court stated that although the statement might well have been admitted as an exception to the hearsay rule, defense counsel's failure to object and argue the matter to the trial court precluded the issue from being raised on appeal.

Petitioner also argues that Martin's admission, coupled with the testimony of three witnesses who identified Martin as the person who killed the police officer, would have resulted in a different outcome. Other than this statement that the outcome would have been different, petitioner offers no support for his assertion.

■ Petitioner also argues that Martin's admission to the witness could have been

admitted for the purpose of rehabilitating the credibility of the witness. The state had attempted to impeach the witness by pointing to her inconsistent statements and her failure to initially identify Martin.

While the witness may have been rehabilitated in this fashion, trial counsel did rehabilitate the witness by again having her testify to her fear of Martin and her uncertainty about what he would do to her if she identified him to the police.

■ Strategic choices of attorneys are given great deference. The court will not question sound tactical decisions of trial counsel. *High v. Kemp*, 819 F.2d 988 (11th Cir.1987), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989).

Petitioner next argues that Martin's admission of guilt could have been used to undermine the credibility of his transcribed testimony. While that may indeed be true, it is quite apparent from reading the transcribed testimony that Martin's credibility was seriously challenged by the questioning of defense counsel.

■ Counsel is not required to raise every issue or pursue every avenue of inquiry. Counsel is required to exercise skill, judgment and diligence of a reasonably competent attorney. *Dyer v. Crisp*, 613 F.2d 275 (10th Cir.) *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

Petitioner next argues that counsel was constitutionally ineffective because counsel failed to introduce evidence of other crimes linking Martin to the murder of the police officer. Petitioner argues that there was evidence that Martin had killed another man two days before the events in question. Petitioner suggests that both murders involved a black man shooting white victims in the head through an open car window. Petitioner's facts are unsubstantiated in the record and no direct link with Martin is even remotely established.

■ In addition, petitioner's claim that the evidence of the second crime should be

---

**1.** Because Martin invoked his Fifth Amendment privilege against self-incrimination, his testimony at the third trial consisted of a reading of a

transcription of his testimony at the second trial.

admitted pursuant to K.S.A. 60–455 is misplaced. The Kansas Supreme Court has determined that the statutory provision allowing the admission of prior crimes evidence for limited purposes does not apply to witnesses, but only to defendants. *State v. Bryant,* 228 Kan. 239, 613 P.2d 1348 (1980). Here Martin was merely a witness, not a defendant. Petitioner's argument is without merit.

■ Petitioner's final assertion is that defense counsel's cross-examination of Martin was constitutionally inadequate. Contrary to petitioner, this court's reading of the record is that a vigorous cross-examination was conducted. Counsel repeatedly impeached Martin's testimony and drew considerable attention to his apparent incredible statements. Petitioner has made no showing that the cross-examination was constitutionally infirm.

In order to meet the *Strickland* standard, petitioner must establish that defense counsel's performance was deficient, meaning it fell below the legal profession's objective standards for reasonably effective representation and that this deficiency prejudiced his defense to the extent that there is a reasonable probability that but for defense counsel's errors, the result of the proceeding would have been different. *U.S. ex rel. Partee v. Lane,* 926 F.2d 694, 700 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992).

"The ultimate benchmark of the inquiry is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* at 701. This court has the considerable advantage of viewing the record after the fact when hindsight clears the vision almost to perfection. Even from this advantageous position, it is apparent that counsel's conduct was well within the constitutionally mandated requirements for effective assistance. Petitioner's claim is unfounded.

Petitioner's second claim is that he was denied his constitutionally protected right of due process when the trial court deprived him of a fair opportunity to consult with an expert in hypnosis. Petitioner acknowledges that on February 24, 1984, the court granted permission to use previously granted funds to hire a hypnosis expert. Petitioner's argument, however, is that the court denied his motion for a continuance to allow him time to secure the services of such an expert.

Petitioner had sought to suppress the testimony of two prosecution witnesses who had undergone hypnosis. Unable to secure his own expert for testimony on the motion to suppress, petitioner relied on the cross-examination of the prosecution's expert witnesses and his submittal of written materials to the court for its consideration. The motion was denied and the two witnesses were allowed to testify at trial.

The crux of petitioner's argument is that he was denied his constitutional right to present his defense when the trial court denied his motion for a continuance to secure a hypnosis expert. In support of his position, petitioner relies chiefly on *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). It should be noted that *Ake* concerned a very specific question. Though perhaps analogous to the issue of the necessity of providing defendant with an expert in hypnosis, the question in *Ake* was "... whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question. *Id.* at 70, 105 S.Ct. at 1089. The Court replied in the affirmative.

More importantly, the issue before this court on review is not whether petitioner was entitled to an expert on hypnosis, the trial court granted the funds for that purpose, the question is what is the standard of review in a habeas action from a trial court's denial of a motion for a continuance.

■ The grant of a request for a continuance is within the trial court's sound discretion. *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377

(1940). To warrant federal habeas relief, the denial of a continuance must constitute not only an abuse of discretion, it must be so arbitrary and fundamentally unfair as to result in a violation of due process. *Case v. Mondragon*, 887 F.2d 1388, 1396–97 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). When evaluating fundamental fairness, a court must focus on the need for the continuance and the actual prejudice resulting from its denial. *Scott v. Roberts*, 777 F.Supp. 897, 899 (D.Kan.1991).

■ Petitioner claims he was unable to secure an expert in the short amount of time allowed by the trial court before trial. Petitioner fails to mention, however, that this was his third trial with basically the same evidence and witnesses. There is no suggestion in the record that the two prosecution witnesses or their testimony was unknown to the petitioner. The question of the use of witnesses who had undergone hypnosis was certainly no surprise to the petitioner. Under the facts of this case, the court finds the need for the continuance has not been demonstrated by petitioner.

Even if this court were to find that the state trial court abused its discretion in denying the continuance, the writ will only issue if the court concludes that the petitioner was denied his right to a fundamentally fair trial. *Id.* at 899. The court cannot reach such a conclusion.

■ Petitioner intimates that had he been allowed to present an expert at the hearing on the motion to suppress, the trial court might have excluded the witnesses' testimony. Hypnotically enhanced testimony, however, is never excluded at trial *per se* on the ground that it tends to be unreliable. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The *Rock* decision specifically addressed whether a defendant who had been hypnotized was precluded from testifying in her own defense but left open the question concerning the exclusion of witnesses, other than the defendant, whose testimony had been hypnotically enhanced. *Id.* at 58 n. 15, 107 S.Ct. at 2712 n. 15.

In *Robison v. Maynard*, 829 F.2d 1501, 1508 (10th Cir.1987), the court determined that the use of any posthypnotic testimony is not *per se* a constitutional error. *Robison* concerned the testimony of a witness rather than a defendant. A reviewing court must find that safeguards have been employed to insure reliability. *Id.* at 1508. In addition, petitioner has the burden of proving by the preponderance of the evidence that any differences between the pre-hypnosis statements and trial testimony were the products of the hypnosis. *Beachum v. Tansy*, 903 F.2d 1321, 1326 (10th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990).

In this case, the state trial court carefully scrutinized the evidence presented on the motion to suppress, read numerous cases and treatises on the issue, noted that the trial testimony did not significantly differ from the pre-hypnosis statements, prevented the witnesses from testifying to any new information disclosed in an hypnotic interview, and allowed the defendant to cross-examine on the effect of any posthypnotic suggestion.

The testimony of the witnesses in question may have suffered somewhat due to the extended time period between the events and the three trials. In addition there were some differences between the testimony in trials one, two, and three. Petitioner, however, has presented no evidence that any of these differences were the result of the hypnosis.

Petitioner has failed to show that he was denied a fundamentally fair trial.

IT IS THEREFORE BY THE COURT ORDERED the petition for writ of habeas corpus is denied.