[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Todd Rizzo, by and through his attorneys, has moved this Court to continue his sentencing in order to "allow him to continue to develop and present evidence at a hearing in which he will seek to establish that the death penalty is administered in an arbitrary manner by the State of Connecticut."[1] The defendant makes his motion pursuant to the Eighth[2] and Fourteenth[3] amendments to the United States constitution, Article first, §§ 1,[4] 8,[5] 9,[6] and 20[7]
of the Connecticut constitution, and State v. Cobb,234 Conn. 735, 663 A.2d 948 (1995). The Court finds the following facts and makes the following order.
 Procedural History
The defendant was arrested and charged with violating Connecticut General Statutes § 53a-54b(a) in connection with the bludgeoning death of a thirteen year old boy. On March 29, 1999, the defendant entered a guilty plea to Capital Felony Murder in53a-54b(a)(9), murder of a person under sixteen years of age. A hearing was held in accordance with 53a-46(a)(b)(2) of the Connecticut General Statutes. The jury deliberated four days and returned its special verdict on June 23, 1999. The jury, pursuant to 53a-46a(f), determined that the aggravating factor found proven beyond a reasonable doubt outweighed the mitigating factor(s) found proven by a fair preponderance of the evidence, thereby mandating the Court to sentence the defendant to death.
On July 9, 1999 the defendant filed this post verdict motion.
The state in addition to oral argument, filed on July 19, 1999, a memorandum in opposition to the motion filed by the defendant; State's "Memorandum in Opposition for Delay of Sentencing in Order to Have Preliminary Evidentiary Hearing."
Oral arguments were heard on this motion and other post verdict motions July 21, 1999.
 I.
Counsel for the defendant in urging this Court to grant his CT Page 11139 request for a preliminary hearing to establish what work has been done to develop the defendant's claim presented a thorough and extensive offer of proof. The offer outlined the prospective witnesses, and their proposed testimony and statistical work presently completed. Counsel requested a continuance for fourteen months in order to complete the statistical work required for the hearing requested pursuant to this motion. The state objected to the request and moved for sentencing pursuant to the verdict of the jury.
 II.
The "essential claim" that the defendant hopes to establish at a preliminary hearing is that "the death penalty is applied arbitrarily to defendants who are African-American or to defendants whose victims were Caucasian."[8] DEFENDANT'SMOTION, pp. 2-3.
The defendant does not claim that his particular sentence was affected by these racial factors, nor will the Court so infer. The defendant has not claimed his sentence was in fact the "product of passion, prejudice or any other arbitrary factor, nor does he claim that the statistical evidence sought to be developed in support of the requested hearing, will lead to proof that his sentence was the product of passion, prejudice or any other arbitrary factor.
Most importantly, each particular decision to impose the death penalty is made by a petit jury selected from a properly constituted venire. Each jury is unique in its composition, and the Constitution requires that its decision rest on consideration of innumerable factors that vary according to the characteristics of the individual defendant and the facts_ of the particular capital offense. (Cite omitted)
During extensive individual voir dire, questions on what impact, if any, would the race of the defendant or victim play in deliberations were not asked. If the circumstances of a particular case indicate a significant likelihood that racial bias may influence a jury, the Constitution requires questioning as to such bias. Ristaino v. Ross, 424 U.S. 589, 596 (1976).
 III. The Proposed Hearing
General Statutes § 53a-46b provides for immediate review of CT Page 11140 all cases in which defendants are sentenced to death. Subsection (b) of the statute provides that "[t]he Supreme Court shall affirm the sentence of death unless it determines that: (1) The sentence was the product of passion, prejudice or any other arbitrary factors; or (2) the evidence fails to support the finding of an aggravating factor specified in subsection (i) of section 53a-46a." Prior to October 1, 1995, the statute included a third subdivision which required the Supreme Court to affirm the death sentence unless it determined that the sentence was "excessive or disproportionate to the penalty imposed in similar cases . . ." General Statutes (Rev. 1981) § 53a-46b. In April of 1995, the Connecticut legislature voted to delete the third provision from the statute, leaving only subdivisions one and two as bases for overturning death sentences.
The plain language of § 53a-46b(b)(1) requires that the defendant must be sentenced to death before his sentence can be reviewed. General Statutes § 53a-46b(b)(1) states that the Supreme Court "shall affirm the sentence of death" unless it finds that the sentence was the result of passion, prejudice or some other arbitrary factor. The evidence fails to support the finding of an aggravating factor specified in subsection (i) of section53a-46a. The Supreme Court cannot affirm a sentence unless it has first been imposed. Thus, a finding that the defendant could challenge his sentence before it is even imposed would reach far beyond the bounds of the statute. Second, the defendant proposes to produce evidence at his requested hearing "regarding all cases in which the charge of capital felony could have been prosecuted" to demonstrate his claim that racial prejudice permeates Connecticut's capital sentencing scheme. (Emphasis added.)DEFENDANT'S BRIEF, p. 3.
The Connecticut Supreme Court, however, has previously defined the universe of cases from which the ultimate pool of "similar cases" would be drawn for proportionality review, and that universe is significantly smaller than "all cases in which the charge of capital felony could have been prosecuted." According the Supreme Court, the relevant universe consists only of "capital felony convictions in which there was a penalty phase hearing." State v. Webb, supra, 238 Conn. 528. Included in that universe are cases on appeal, and absent exceptional circumstances, cases reversed on appeal. Id. The "similar cases" which would then have to be culled for comparison consist "of those cases in which the underlying capital felony convictions involved conduct that is substantially similar, in its criminal CT Page 11141 characteristics, to that of the defendant in the case under review." Id.
 IV.
The defendant claims that the Connecticut Supreme Court's decision in State v. Cobb; supra, 234 Conn. 735; entitles him to pursue this claim under § 53a-46b(b)(1). The defendant reads Cobb too broadly. In Cobb the defendant asked the Court to enlarge the class of cases that it would consider in determining whether or not the death penalty had been imposed disproportionately to include "all cases prosecuted in Connecticut after October 1, 1973, in which a capital felony could have been charged and which resulted in a homicide conviction following a plea or trial. The defendant argue[d] that this expanded universe of cases [was] necessary to enable [the] Court to evaluate his claim that race has an impermissible effect on capital sentencing decisions in Connecticut, rendering the imposition of the death penalty upon him disproportionate under § 53a-46b(b)(3)." Id., 737-38.[9] TheCobb Court ultimately held that as a matter of statutory interpretation § 53a-46b(b)(3) did not contemplate the type of inquiry that would be necessitated by the defendant's motion. Id., 747, 752.[10] Most importantly, however, the Cobb Court stated that if the defendant were to have proceeded under §53a-46b(b)(1), "it would have been necessary for the defendant to have made his statistical record in the trial court, and to have subjected it to a full evidentiary hearing, as in McClesky, before presenting it on appeal."[11] Id., 762.
The question of whether a defendant who had ample notice and opportunity, as a result of the publication of this opinion, to create a trial court record sufficient for an appellate claim under § 53a-46b(b)(1) in his direct appeal, but did not do so, could nonetheless do so by way of a post appeal habeas corpus action was left open in Cobb. The defendant is represented by the Public Defender's capital litigation team. In every capital case since Cobb, the Public Defender's office has filed motions similar to the one now before the court. The defendant cannot present a valid reason for his delay in raising this request. Further State v. Cobb was decided by our Supreme Court on August 8, 1995.
The verdict in the penalty phase of this case was delivered on June 23, 1999, almost four years post-Cobb. CT Page 11142
This Court finds that the defendant had ample notice and opportunity to be prepared to present the evidence requested pursuant to this action in a timely fashion.
It should be pointed out that the U.S. Supreme Court held inMcClesky v. Kemp, 481 U.S. 292, that the Baldus statistical study, assuming its validity, was insufficient to establish that the Georgia capital sentencing scheme violated the equal protection clause. The Court explained that in order for the defendant to have prevailed on his claim he would have had to prove that the decision maker in his case acted with purposeful discrimination. The defendant, however, did not make such a claim; nor did he offer any evidence particular to his case to prove that racial discrimination played a part in his sentencing.McClesky v. Kemp, supra, 481 U.S. 292-94.
Finally, as the United States Supreme Court has directed inMcClesky v. Kemp, 481 U.S. 279, 291-299, 107 S.Ct. 1756,95 L.Ed.2d 262 (1987), even if statistical evidence that is presented is accepted, in order to raise an equal protection claim in this manner, the defendant must prove that the decision-maker in his case acted with "discriminatory purpose." Id., 292. As already addressed in the earlier part of this memorandum, the defendant has not alleged purposeful discrimination by the decision-maker in his case. As it is presently written, the defendant's motion does not allege purposeful discrimination in his particular case, but attacks the entire legality of Connecticut's capital sentencing scheme.[12]
The defendant, Rizzo's, claim is strikingly similar toMcClesky's claim. The defendant has not alleged that he was the victim of purposeful discrimination by the decision maker in his case. The defendant has not asked to put on evidence at the proposed hearing which would support a claim that he personally suffered discrimination. The defendant seeks instead to establish that Connecticut's capital sentencing scheme is inherently prejudicial to black defendants and defendants who have killed white victims and seeks a continuance to amass the statistical evidence.
It is important to note that the defendant's motion is not based upon a claim that the decision makers in his case acted with a discriminatory purpose towards him. See McClesky v. Kemp, supra, 107 p. 1296. The Court agrees with the state's position.STATE'S BRIEF p. 4. The defendant lacks standing under the CT Page 11143 Connecticut Constitution to assert the rights of murder victims as a means of attacking his death sentence. The crux of the defendant's claim is that defendants who kill whites are more likely to receive the death penalty than those who kill nonwhites. Essentially then he is claiming that the killers of nonwhites are given undue leniency. This is a victim's rights argument. When someone like the defendant seeks standing as a third party he cannot lay a claim to relief that exceeds the rights of the party whose interests he is allegedly protecting. In Connecticut, the victims of crimes have the right "to be treated with fairness and respect throughout the criminal processes." Article XXIX(b)(1). Thus it is beyond cavil that Connecticut citizens have a constitutional right to fair and equal treatment when victimized by a crime. Despite these guarantees, however, the victim's rights amendment also states that "nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any case." Id. Consequently this defendant is constitutionally barred from asserting the vicarious rights of homicide victims.
To establish an equal protection claim, the defendant bears the burden of showing purposeful or intentional discrimination.State v. Tillman, 220 Conn. 487, 496 (1991); Golab v. NewBritain, 205 Conn. 17, 26 (1987). This includes claims of discriminatory enforcement. However, a claim that discrimination existed in any given case cannot be proven by a statistical study alone.
The defendant does not claim that the application of Connecticut's death penalty statutes "`is an irrational exercise of governmental power." 107 S.Ct. At 1766 n. 8. Thus he has not raised a legally sufficient equal protection claim. See Id. at 1767. The issue of standing need not be decided.
Statistical studies are generally unavailing in this area of the law because they do not prove that race enters into the scheme, or entered into the defendant's own case, rather they "at most show only a likelihood that a particular factor entered into some decisions." McClesky, 104 S.Ct. At 1776. It is important to note, again, that no issues of race have been raised in this case from voir dire through verdict.[13]
General Statutes § 53a-54b "genuinely narrow[s] the class of persons eligible for the death penalty"; (Internal quotation CT Page 11144 marks omitted.) Romano v. Oklahoma, 512 U.S. 1, 7,114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); by enumerating only nine behaviors which will expose a person to the death penalty. General Statutes § 53a-46a(b) bifurcates the guilt determining proceedings from the sentencing proceedings. General Statutes § 53a-46a(1) enumerates the seven statutorily recognized aggravating factors; at least one of which must be found in order to consider the defendant eligible for the death sentence. General Statutes § 53a-46(d) permits the consideration of "the defendant's character, background, or history, or the nature and circumstances of the crime" as mitigation; whereas subsection (h) sets our four statutory mitigating factors which if found to exist, bar the imposition of the death penalty altogether. See Romano v.Oklahoma, supra, 7; McClesky v. Kemp, supra, 481 U.S. 303. General Statutes § 53a-46a(e) provides that jurors will receive specific and detailed guidance in making their decision through the filling out of special verdict forms. Finally, General Statutes § 53a-46b provides for automatic review, by the Connecticut Supreme Court, of any death sentence that is imposed.
 V.
Our Supreme Court has stated that courts must vigilantly ensure that requests for continuances do not become mere vehicles for achieving delay, which, in turn, may obstruct the orderly procedure in the courts or interfere with the fair administration of justice. State v. Gordon, 197 Conn. 413 (1985) 504 A.2d 1020.
The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process. Avery v.Alabama, 308 U.S. 444 (60 S.Ct. 321, 84 L.Ed. 377).
There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Ungar v. Sarafite, 376 U.S. 575, 569,84 S.Ct. 841, 11 L.Ed.2d 921.
The request for a fourteen month continuance based upon the facts and circumstances of this case is unreasonable, nor has the defendant shown that he will be prejudiced by denial of this request. CT Page 11145
 Conclusion
For the foregoing reasons, the defendant's MOTION FOR AHEARING PURSUANT TO CONN. GEN. STAT. § 53A-46b(b)(1) TO ESTABLISHTHAT THE DEATH PENALTY IS ADMINISTERED TN AN ARBITRARY MANNER is denied.
By the Court,
HOLDEN, J.