**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 99-60355**

**CURTIS B. CURRY,**

**Petitioner-Appellant,**

**versus**

**ROBERT L. JOHNSON, Commissioner,**
**Mississippi State Penitentiary;**
**MIKE MOORE, Attorney General, State of Mississippi,**

**Respondents-Appellees.**

**Appeal from the United States District Court**
**for the Northern District of Mississippi**
**(2:96-CV-195-B-B)**

March 26, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[1]

The primary issue at hand is whether Curtis B. Curry was represented by counsel when he pleaded guilty to two indictments — numbers 8225 and 8226 — on which he had *not* been arraigned. His entire plea encompassed 11 counts, charged in seven indictments, on five of which he had been arraigned, and, as noted, on two of which, at issue here, he had *not* been arraigned.

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In his federal habeas petition, Curry claimed: his plea was *not* voluntary; the state trial court should have held a hearing on his motion for post-conviction relief; the indictments were defective; and he received ineffective assistance of counsel. The district court adopted the magistrate judge's recommendation that the petition be dismissed with prejudice. In addition, it denied Curry a certificate of appealability (COA).

Our court, however, granted Curry a COA on "whether Curry was represented by counsel when he pleaded guilty to indictments numbers 8225 and 8226 in that his *retained* counsel announced to the court that he *had not been retained* to represent Curry in those proceedings". (Emphasis added.) The order further stated: "*If this question is answered in the negative*, the other issues raised by Curry regarding the voluntariness of his plea *may* become relevant and should also be briefed". (Emphasis added.) Curry was cautioned, however, to "consider whether vacating the guilty pleas on these other counts, leaving him open to the possibility of reindictment, is in his best interest under Mississippi law". (If Curry were to succeed in this appeal and we were to vacate his guilty plea, he could be tried on the original charges and be subject to almost 400 years in prison *without parole*.)

We answer the first COA question in the affirmative: Curry was represented by counsel when he pleaded guilty to indictments 8225 and 8226. Therefore, we do *not* reach the second COA question

2

— the voluntariness of the plea.  The denial of habeas relief is **AFFIRMED**.

I.

On 14 July 1993, Curry was to be tried on indictment number 8064 (sale of cocaine to an undercover law enforcement officer). He previously had been arraigned on that indictment, as well as four others (8030, 8065, 8066, 8089), for sale of cocaine to the same undercover officer.  He had *not* been arraigned on two other indictments:  number 8225 charged five counts of possession of a controlled substance; number 8226, possession of a controlled substance with intent to distribute.

That morning, before trial began, Curry's attorney, Johnnie Walls, requested a meeting with Curry, the district attorney (DA), two assistant district attorneys, a city attorney, and the trial judge.  Walls informed the judge that he had "advised [Curry] that he has a great chance of being convicted on every one of [the various charges] because they involve, for the most part, direct evidence[,] ... *sale to an undercover sworn officer*".  (Emphasis added.)  He explained:

> The D.A. has made an offer to [Curry] to enter a plea on this cause, 8064, and the rest of them [the four other indictments on which Curry had been arraigned] to be combined, and to recommend a sixty-year sentence, a twenty-five thousand dollar fine, on each one, but this would be concurrent, assuming the Court would accept that recommendation, and that [Curry] would agree to *not* fight the

3

forfeiture of the property that the State has tried to forfeit that he owns.

    ... In addition to that, [Curry] is to be arraigned today on two other charges involving possession with intent *that I do not represent him on. I don't know anything about the evidence on those*. But it's my understanding that the D.A. is also willing to make those two charges part of the offer.

(Emphasis added.) Walls expressed his concern that

if [Curry] is convicted of five or six consecutive charges involving possession with intent or sale of cocaine, [] he will spend the rest of his natural life in prison without some kind of parole. Because if the Court decides to sentence him as a second and subsequent, under the second and subsequent statute under which he has been indicted, and if the Court gives him consecutive sentences, assuming that he is convicted on all of them, he could never get out of prison. And I think he needs to understand that from more than just me.

    ... I'm prepared right now to go out there and try his case. But I'm telling him on the record that I believe he's going to be convicted of this charge.... [H]e tells me he's *not* guilty.... I respect that.... I'm just, quite honestly, worried about him in the sense that I don't think he's making the right decision and I'm concerned about what he may say about me later that I didn't tell him and I didn't try to explain it....

    I hate to say all this in front of the D.A. and on the record, but I think I'm obligated to do it in this instance. And I realize that the statements I'm making are somewhat putting me in conflict with him. But I don't know what else to do. I just don't feel comfortable walking into this courtroom feeling almost ninety-nine percent sure my client is going to be convicted. And I'm telling him that and he won't listen to me.

4

> ... I want the record to reflect ... [and] I want him to at least acknowledge that we've told him these things that I've just said, we've discussed the evidence with him, we've discussed his possible defenses, and I've told him what his rights are.

(Emphasis added.)

The judge complimented Walls' candor with the court and his client, and asked Curry if he understood what his lawyer had just said. Curry affirmed that he did. (Curry has a Master's degree in math and taught in the Mississippi public schools for 16 years.)

The judge sought to clarify the number of years to which Curry could be sentenced as a second and subsequent offender, asking "So we're talking about sixty times five cases?"[2] The following colloquy ensued:

> [WALLS]: [W]hat bothers me ... is *not* the total number of years. If he were sentenced to three hundred years

---

[2]Curry had a prior conviction for possession of marijuana.

> Except as otherwise provided in Section 41-29-142, any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.

> For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.

MISS. CODE ANN. § 41-29-147 (1972).

5

[concurrently], under the ... present statute, *I think he would still be eligible for parole after he serves ten. But if he happens to get consecutive sentences, then he has to serve ten on each one before he's eligible for parole under the statute.*

*And ... I've explained that to him ... if he's tried consecutively, as the D.A. has promised to do, then he may end up as an habitual offender which means he gets no parole on any of them....*[3]

[DA]:    Your Honor, we have indicated [] to the Defense, that we're going to review these in the event that we do convict again, and with an eye toward re-indicting as habitual under 99-19-81.  And that would, under one conviction of that, under that indictment there, *he would have to serve sixty years without parole under one conviction there for sale*.  And we have indicated that to them, too.

[COURT]:  So you wouldn't need but one conviction out of —
[DA]:  — That's right.

-------------------

[3]The habitual offender statute provides:

Every person convicted in this state of a felony *who shall have been convicted twice previously* of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, *shall be sentenced to the maximum term of imprisonment* prescribed for such felony, and such sentence shall not be reduced or suspended *nor shall such person be eligible for parole or probation*.

MISS. CODE ANN. § 99-19-81 (1972) (emphasis added).

[COURT]: — what you've got left in order to get sixty years without parole?

[DA]: Without parole. And that's what we were fully intending to do and we did advise Defense attorney of that. *We did not do that under the circumstances now because he only has one conviction now. But after another conviction he would be [a] legitimate habitual offender under that section.*

...

[COURT]: So ... if you got a conviction today there's still six more?

...

So all you would need would be one out of six to get another sixty years without probation or parole?

[DA]: That's right.

[COURT]: And that sentence would be mandatory.

...

The law says I would have to give sixty years without probation or parole.

[WALLS]: That's right....

[COURT]: Well, surely the District Attorney, out of six cases, will get at least one conviction.

[CURRY]: Can I ask you a question?

(Emphasis added.)

Curry and Walls conferred off the record. Curry then asked the DA if it was too late to accept the plea offer. The DA stated

that he would make his previous recommendation.  Walls and Curry again conferred off the record, subsequent to Walls' stating:

> [S]ince we're on the record I want to make sure also that Mr. Curry is *not* feeling pressured by what I did to change your mind. Because if you change your mind, I want you to change your mind because you feel that that's what you want to do, based on the advice you've been given and what you think is best for you.  I mean I want you to understand that you have me in a real precarious position.  And I'm saying it on the record so everybody can see my feelings about it.

(Emphasis added.)  Following a nearly 20-minute recess, Curry stated:  "I'm going to take the plea bargain".

The court then turned to the two indictments for which Curry had *not* been arraigned:  8225 (five counts of possession), and 8226 (*sale of cocaine*).  Walls indicated that he had *not* been *retained* to represent Curry on those charges.

> [COURT]:   But you may, if you wish, represent him for the purpose of entering a plea.  Or do you wish the indictments to be read?
>
> ...
>
> [Curry and Walls conferred]
>
> [WALLS]:   ... [I]f Mr. Curry is read these indictments and he understands the charges in them and he pleads guilty to these, I have *no* problem standing with him to do that.  *But I just want the record to be clear that I have not investigated these and I don't know the facts of these and he understands that.*
>
> But because they are charges that will be pending, left alone out there, that have the

8

> potential effect of doing the same thing that all these other charges do, and even greater, it would be my recommendation, if he's guilty of them, to accept that offer and to allow the D.A. to include these along with the other charges.
>
> [COURT]: It would certainly be in his best interest to have [them] included....

(Emphasis added.) *At Walls' request, the DA then read indictment 8225 to Curry.*

Curry conferred with Walls. Thereafter, on the record, Walls explained Curry's contention: in 8225, the drugs which counts I, II, III, and V alleged Curry possessed — meperidine, hydrocodone, oxycodone, and butalbital (*count IV, as the court noted, charged possession of cocaine*) — involved prescription medications. Walls stated he did *not* know how to counsel Curry on this defense because he had *not* investigated the factual bases for the charges. The court took a brief recess while the DA checked into the allegations.

The record does *not* reflect the outcome of the DA's inquiry; but, it does show that, after the recess and after further conferring with Walls, Curry pled guilty to all five counts of indictment 8225 and, after it was read by the DA, to the single count in indictment 8226. Curry stated: he understood the charges in all seven indictments (arraigned *and* unarraigned) and had committed all of the crimes charged in those indictments.

9

After the DA made his sentencing recommendation, the court informed Curry of the maximum sentence, and Curry affirmed that he understood he could receive a sentence of 386 years, part of which *could be without parole if he were reindicted and sentenced as a habitual offender*.  The judge explained to Curry the rights he waived by entering the plea, and Curry affirmatively stated that he waived them.  Furthermore, *Curry expressed his satisfaction with the services of his attorney, and stated:  Walls had not threatened him in any way; and Walls had properly represented him during all stages of the case*.

The court sentenced Curry to six terms of 60 years (for 8030, 8064, 8065, 8066, 8089, and 8226), four terms of six years (for counts I to IV of 8225), and one term of two years (for count V of 8225), with all sentences to run concurrently with each other and consecutively with an earlier conviction and sentence, which he was then serving.  The court also ordered him, *inter alia*, to pay a fine of $25,000 within one year of his release from custody.  In sum, Curry's sentence for a total of 11 counts in seven indictments, with all time concurrent, was for 60 years, *following completion of his earlier sentence; and he was eligible for parole*.

Curry's motion for post-conviction relief was denied, and the Mississippi Supreme Court affirmed the denial. *See **Curry v. State**, 691 So. 2d 1021 (Miss. 1996) (unpublished).  As noted, Curry's

federal habeas claims were denied as well. *Curry v. Anderson*, No. 2:96-cv-195-B-B (N.D. Miss. 7 May 1999) (unpublished).

## II.

Pursuant to the COA, we first consider whether Curry received effective assistance of counsel when he pled guilty to indictments 8225 and 8226. Again, because we conclude he did, we do *not* reach the contingent second issue, that of voluntariness.

## A.

An ineffective assistance of counsel claim presents mixed questions of law and fact; therefore, we review *de novo* the district court's ruling. *See, e.g., Pratt v. Cain*, 142 F.3d 226, 230 (5th Cir. 1998). As the magistrate judge determined in his report and recommendation, the state court did *not* conduct a merits review of the claim; therefore, AEDPA's requirement that federal habeas courts honor state courts' reasonable conclusions regarding the constitutional effectiveness of counsel does *not* apply. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999).

Needless to say, a plea hearing is a critical stage of the prosecution at which the Constitution guarantees the right to counsel. *See Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (state proceeding at which plea is entered is critical stage); *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965) ("One of the most precious applications of the Sixth Amendment may well be in

11

affording counsel to advise a defendant concerning whether he should enter a plea of guilty.").

The first question is whether Walls was, in fact, appointed counsel for indictments 8225 and 8226; if so, the second is whether he, in fact, provided representation on those indictments; and, if so, the third, and final, question is whether that representation was effective.

1.

As explained, when the court first mentioned indictments 8225 and 8226, Walls advised he did *not* represent Curry on them. However, the court appointed Walls for the purpose of entering a plea. Walls accepted the appointment. Curry, who felt free to interject at other points in the hearing, did *not* object; and, after entering the plea, Curry affirmed his belief that Walls had given good advice about entering the plea and had properly represented him at all stages of the case in which he was involved.

On appeal, Curry objects to Walls' representation, in that he (Curry) did *not expressly consent to the appointment*. However, Curry impliedly consented to it by repeatedly conferring with Walls about the plea. *Cf.* **People v. Assenato**, 629 N.E.2d 166, 169, 257 Ill. App. 3d 1026, 1029 (Ill. App. Ct. 1994) ("Where a defendant does *not* object to his counsel's representation, he is deemed to have acquiesced in that representation." (emphasis added)).

12

Furthermore, even if Curry had objected to Walls' representation, whether to appoint a different lawyer would have been in the court's discretion. For example, as stated in *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973):

> Although an indigent criminal defendant has a right to be represented by counsel, he does *not* have a right to ... demand a different appointed lawyer except for good cause. Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court.

(emphasis added; citation omitted).

It does *not* appear that Curry was indigent. In any event, as stated, he did *not* object to Walls' being appointed for numbers 8225 and 8226. Moreover, "[f]or an attorney to render effective and competent representation there is *no* requirement of a ceremonial court appointment or a formal contract between attorney and client". *Collins v. Green*, 505 F.2d 22, 25 (5th Cir. 1974) (emphasis added).

2.

"The Constitution's guarantee of assistance of counsel *cannot* be satisfied by mere formal appointment", *Avery v. Alabama*, 308 U.S. 444, 446 (1940) (emphasis added); but, Walls' representation was more than a mere formality. *Cf. United States v. Cronic*, 466 U.S. 648, 654 (1984) ("The [Sixth] Amendment requires not merely

13

the provision of counsel to the accused, but 'Assistance,' which is to be 'for his defen[s]e.'").  The hearing transcript reflects that, between the time the court appointed Walls to represent Curry on indictments 8225 and 8226 and Curry took the oath to enter the guilty plea, Curry conferred with Walls on six separate occasions.

After one such conference, Walls requested a discussion off the record; when they went back on the record, Walls explained he had simply wanted to clarify that he had *not* been retained on those two indictments and had *not* investigated them, but would represent Curry if he was read the indictments and understood the charges.

After another conference between Walls and Curry, Walls explained to the court that Curry claimed a defense to four of the five counts in indictment 8225 (each count except possession of cocaine), in that Curry had a medical prescription; Walls expressed concern that he did *not* know how to advise Curry on this defense. This resulted in a brief investigation by the DA, during which the court was in recess.  As soon as the recess ended, Curry agreed to plead guilty to all five counts.  What the investigation revealed is *not* evident in the record; but, whatever occurred apparently satisfied Walls' concern that he did *not* know how to advise Curry, persuaded Curry to make the plea, and sufficed to allay the judge's concerns that prompted him to ask the DA to inquire further into the defense.

Walls did *not* formally investigate the charges; but, by repeatedly conferring with Curry, he had the opportunity to learn about the charges and factual background. *Cf.* **Avery**, 308 U.S. at 446 ("[T]he denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given assistance of counsel." (footnote omitted)). Walls worked on Curry's behalf, insisting the indictments be read to Curry and ensuring that the defense Curry suggested was addressed. Therefore, as appointed counsel, Walls did actively represent Curry.

3.

Because Walls was appointed counsel and acted on Curry's behalf, this case does *not* fall within **Cronic**'s framework. **Cronic**, 466 U.S. at 658-62 (considering cases in which ineffectiveness of counsel *can be presumed*). Even though Curry did *not* explicitly accept Walls' appointment, and merely did so implicitly by *not* so objecting, he *cannot* assert "the complete denial of counsel ... at a critical stage of his trial". **Id.** at 659. Nor can he maintain "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing", **id.**; Walls prompted an inquiry into the defense that Curry obtained certain drugs through medical prescriptions.

Therefore, we turn to *Strickland v. United States*, inquiring whether counsel's performance was deficient and, if so, whether that deficient performance prejudiced the defense. *See* 466 U.S. 668, 687 (1984); *see also* *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying two-prong *Strickland* test to challenge to guilty plea).

In the context of a guilty plea, "[p]rejudice occurs if there is a reasonable probability that, but for counsel's errors, [defendant] would *not* have pleaded guilty and would have insisted on going to trial". *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (emphasis added; internal quotation marks omitted); *see Hill*, 474 U.S. at 59.

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.*

Curry maintains Walls' performance was deficient because, if Walls had investigated: he would have found Curry was innocent, in that the drugs had been prescribed for him; it is doubtful he would

16

have encouraged Curry then to enter a plea. However, even if Walls had concluded Curry was probably innocent, he still may have counseled him to plead guilty, rather than risk the dire consequences of a trial-conviction. If Curry had chosen *not* to plead guilty to indictments 8225 and 8226, Curry could have been tried for the six counts as a subsequent offender, *and possibly as a habitual offender*, based on Curry's previous pleas and sentences on the five indictments for the sale of cocaine; he then would have faced a possible additional sentence of up to 86 years *without parole*.[4]

Clearly, Curry was *not* prejudiced by Walls' representation on the two unarraigned counts. Walls had successfully negotiated a plea encompassing the five indictments on which Curry had been arraigned. Then, at *no* additional penalty to Curry, the charges in

---

[4]At the plea hearing, Curry affirmed he had committed the charges and he did *not* claim innocence:

> [COURT]: Do you understand that I will *not* accept your plea of guilty if you claim that you are innocent?
>
> [CURRY]: Yes, sir.
>
> [COURT]: ... [D]o you understand that by pleading guilty you're admitting that you did in fact commit the crimes stated in the indictments?
>
> [CURRY]: Yes, sir.

(Emphasis added.)

the two unarraigned indictments were brought into the plea. *Cf.* *Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does *not* warrant setting aside the judgment of a criminal proceeding if the error *had no effect on the judgment.*"(emphasis added)). Even if Curry had gone to trial on indictments 8225 and 8226 and had *not* been convicted, he still would have faced the sentence that resulted from pleading guilty on the charges in the other indictments. Therefore, going to trial could *not* have decreased his sentence but would have simply risked lengthy imprisonment (for the rest of his life; he was 41 at sentencing) *without parole*.

Because Curry has *not* shown prejudice, we need *not* consider deficient performance *vel non*. But, in the alternative, Curry fails on that prong as well; restated, he has *not* shown Walls' performance was deficient. The adequacy of Walls' efforts "is illuminated by the absence of any indication ... that [Walls] could have done more had additional time [for investigation] been granted". *Avery*, 308 U.S. at 452; *cf. Strickland*, 466 U.S. at 691 ("[A] particular decision *not* to investigate must be directly assessed for reasonableness in all the circumstances, *applying a heavy measure of deference to counsel's judgments.*" (emphasis added)). There is *no* indication that Walls would have uncovered evidence in addition to that which Curry could have brought to his attention in their various conferences during the plea hearing.

18

His conduct did *not* fall "below an objective standard of reasonableness" or outside "the range of competence demanded of attorneys in criminal cases". **Strickland**, 466 U.S. at 687-88.

Accordingly, Curry was represented by counsel in his pleas to indictments 8225 and 8226, and his counsel rendered effective assistance by having these two additional indictments encompassed in the plea agreement with the original five on which he had been retained to represent Curry.

## B.

As stated *supra*, because we conclude that Curry was represented by counsel in pleading guilty to the charges in indictments 8225 and 8226, we do *not* reach whether his pleas were voluntary.

## III.

For the foregoing reasons, the denial of habeas relief is

**AFFIRMED**.