BARKETT, Circuit Judge,
dissenting:
I will confess that the grisly facts of this case easily tempt one to merge Conklin’s killing of the victim with his acts upon the body after death. However, notwithstanding the atrocious desecration of the body,[1] Conklin was entitled to a fair determination of whether he was guilty of murder or whether, as he claims, he killed George Crooks in self-defense and mutilated the body after death had occurred. I do not believe he received the opportunity to which he was entitled under the Sixth Amendment’s guarantee of a fair trial with effective assistance of counsel. In light of the complexity of this case, the severe limitations on time and resources imposed by the trial court made it impossible for Conklin to receive constitutionally adequate assistance.
Conklin’s lawyer, assistant public defender Tommy Chason, was assigned Conklin’s case on May 4, 1984, the same day Georgia gave notice of its intention to seek the death penalty. The trial was scheduled to commence thirty-seven days later on June 11, 1984. The state did not provide defense counsel with a copy of the indictment or the required exculpatory and mitigating evidence until May 24, less than three weeks before trial. The court denied repeated requests to delay the trial despite counsel’s statements that he was unprepared. The court also denied repeated requests for a small amount of money to hire expert medical assistance, which Conklin could not otherwise afford. After the jury returned its verdict, Conk-lin’s attorney again asked for additional time to prepare for sentencing. The trial judge refused this request, and Conklin was sentenced to death the following day. His lawyer presented no mitigating evidence whatsoever during the sentencing phase.
The primary evidence of what happened on the night Robert Crooks died came from the statements made by Conklin and forensic evidence based on the condition of the body. The majority briefly mentions Conklin’s testimony that Crooks was killed in a struggle attempting to force Conklin to have anal sex.[2] There was no direct evidence to contradict Conklin’s statements. The government’s case depended upon the testimony of the state’s medical examiner, Dr. Saleh Zaki, who opined that certain stab wounds were inflicted prior to, rather than after, death. Thus, the most important evidence in this case as to whether to convict or acquit on the charge of murder consisted of technical forensic evidence.[3]
*1212 The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied “when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.” United States v. Cronic, 466 U.S. 648, 659-60, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In my judgment, Conklin’s case rises to that level. His attorney had thirty-seven days to prepare a complex capital case involving highly technical medical evidence, detailed expert testimony, potential psychological defenses, a troubled mental history, and unusual legal issues, including the consequences of Conklin’s postmortem treatment of the body. The court denied repeated requests for a court-appointed forensic pathologist or medical expert despite the state’s reliance upon forensic evidence of multiple antemortem stab wounds in order to demonstrate malice aforethought and despite Conklin’s need to challenge that evidence in order to present his defense. The court also denied requests for a state-appointed mental health expert for the guilt and sentencing phases. In my view, the likelihood that even a fully competent lawyer could have mounted an effective case for acquittal or for a life sentence in these circumstances is so remote as to render his trial presumptively unfair.
The nature of Conklin’s case made thirty-seven days woefully inadequate to the simultaneous tasks of preparing for trial, crafting effective pretrial motions and presentations, and laying the groundwork for an alternative strategy at sentencing. Conklin’s attorney actually accomplished a fair amount in that time, but the severe time constraints simply precluded effective representation. As the majority notes, he investigated possible defenses, submitted and defended pretrial motions, interviewed witnesses, hired an investigator to find additional witnesses, and consulted outside experts. However, compressing such an overloaded agenda into such a short time period made it virtually impossible to accomplish those tasks effectively.[4] Conk-lin’s attorney may not have needed the months or years obtained by some defendants with considerable financial resources in criminal or civil cases, but thirty-seven days in this situation hardly satisfies minimum constitutional standards.
Despite these obstacles, Chason found an expert witness who would unequivocally testify that no medical examiner could state with certainty that the wounds were caused before death. The trial court denied the necessary funding. The majority discounts the inability to present this expert testimony because Dr. Zaki did admit on cross-examination that the antemortem wounds might have been inflicted shortly after death, possibly up to an hour later (though he suggested that fifteen minutes would be more realistic). However, Dr. Zaki had already stated on direct examination that the same wounds had occurred before death. A concession in cross-examination that the wounds he affirmatively said were inflicted before death could equally have occurred after death cannot substitute for the presence of another, equally qualified expert who would have *1213 directly testified to the plausibility of Conklin’s version of events. The jury could have judged the credibility of each expert and weighed the testimony accordingly. Dr. Zaki was absolutely central to the prosecution’s case, as the majority acknowledges in dismissing Conklin’s claim of insufficient evidence for conviction. Op. at 1199-1201. “Meaningful adversarial testing” of the government’s case depended upon Conklin’s ability to challenge Dr. Zaki.
The majority also downplays the significance of Chason’s failure to present any mitigating evidence at the sentencing phase of Conklin’s trial. In effect, the majority accepts the state court’s finding that Chason made a “tactical decision” not to present additional mitigating evidence. However, “tactical” implies a choice made in order to achieve another purpose. In this case, neither the state habeas court nor the majority cites any plausible advantage Chason obtained by deciding to forgo any and all mitigating evidence at the sentencing phase. Rather, the majority merely notes that Chason presented testimony from Conklin’s father and girlfriend at the guilt phase and then referred to this testimony in his closing argument. Op. at 1204-1205. Nothing explains the failure to present additional evidence about Conk-lin’s history of mental problems or his violent childhood apart from Chason’s lack of time and resources.
The majority’s treatment of Chason’s mitigation “strategy” underscores why I believe Conklin’s case rises to the level of per se ineffective assistance of counsel. Following the analysis outlined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the majority asks whether a reasonable attorney in Chason’s position would have elected to present mitigating evidence. The majority finds Chason’s decision “questionable,” Op. at 1202-1208, but ultimately concludes that a reasonable attorney might have determined that the additional testimony available to Chason “would not have been helpful.” Op. at 1204-1205. However, the hypothetical attorney in Chason’s position would have had insufficient time to prepare a full case at the penalty phase: the trial judge denied requests for additional time as well as the funds necessary to secure a psychiatric expert. Such an attorney would essentially face a choice between presenting an incomplete and ill-prepared ease in mitigation and completely forgoing an explicit case in mitigation. No attorney can make a reasonable choice in these circumstances because neither alternative is reasonable.[5]
Finally, the majority feels “compelled” to reject Conklin’s Cronic claim because the attorney in Cronic itself had only twenty-five days to prepare without any prior experience with the type of case before him, while Chason had thirty-seven days to prepare and had already handled a few death penalty cases. However, Cronic does not stand for the proposition that twenty-five days or more of preparation may never trigger a presumption of ineffective assistance. Rather, the Court held that the “surrounding circumstances” did not justify the presumption in that case. The defense attorney in Cronic had only requested thirty days to prepare for trial, and the trial court actually granted twenty-five days. 466 U.S. at 663, 104 S.Ct. 2039. Most of the government’s case for mail fraud in Cronic involved documenting specific financial transactions, which were not open to serious challenge. Id. at 664, 104 S.Ct. 2039. Given that the defendant’s intent to defraud was “the only bona fide jury issue open to competent defense counsel” and that there was “no reason to *1214 dispute the underlying historical facts,” the Court rejected the “presumption that no lawyer could provide the respondent with the effective assistance of counsel required by the Constitution.” Id. at 664-65, 104 S.Ct. 2039.
Similarly, although the Avery Court rejected a claim of per se ineffective assistance despite only three days of preparation, that holding, too, turned upon “the particular circumstances appearing in this record.” Avery v. Alabama, 308 U.S. 444, 450, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Three witnesses testified that they saw the defendant shoot his wife, the defendant admitted he had traveled several miles to look for her, and the court-appointed attorneys had questioned many people in the small, rural community, none of whom “could offer information or assistance helpful to the defense.” Id. As the Court concluded, “[t]hat the examination and preparation of the case, in the time permitted by the trial judge, had been adequate for counsel to exhaust its every angle is illuminated by the absence of any indication, on the motion and hearing for new trial, that they could have done more had additional timé been granted.” Id. at 452, 60 S.Ct. 321.
Conklin’s case differs significantly. Unlike the situation in Cronic, the “underlying historical facts” were very much in dispute, requiring forensic evidence and expert testimony to resolve. Defense counsel requested continuances and expert witness funding in order to develop his challenge to those facts, and the trial court denied each of these motions. Unlike the situation in Avery, Conklin has suggested specific ways in which his defense would have differed had he been given the time and resources necessary for constitutionally adequate assistance.[6]
Given the complexity of the evidence, the failure of the trial court to provide the time and resources necessary to present a reasonable defense, and the special context of a capital case,[7] I believe that the circumstances would have prevented any attorney from providing competent assistance. I would grant the habeas corpus petition and remand for a new trial.

. Conklin was charged only with murder, not with any separate crime connected to the desecration of the body. The state argued that the desecration of the body was relevant to both the defendant’s state of mind and the question of whether the murder was "outrageously or wantonly vile, horrible, or inhuman,” an aggravating circumstance under Georgia law. See Ga.Code Ann. § 17-10-30(b)(7).

. Conklin claimed that Crooks, who was 6' 2" tall and weighed about 200 pounds, while Conklin was 5' 7" tall and weighed about 150 pounds, tried to force him to have anal sex, something he had never consented to do.

.The government argued that Conklin had killed Crooks during a lover's quarrel and relied heavily upon the large number of stab wounds. The government claimed that 34 stab wounds could not possibly have been inflicted in self-defense. Conklin claims that most of these wounds were inflicted after death as part of his attempt to drain the blood and dispose of the body. Whether the wounds occurred before or after death was therefore critical to the case.

. For example, Chason failed to ask Chuck Desederio questions about Crooks’ general reputation for violence after the judge disallowed several specific statements. See Majority Op. at 1203. Chason also failed to develop sufficiently detailed background materials to supplement his requests for psychiatric evidence. See District Ct. Order at 69-72, 143-45. The trial court also admonished Chason for his inability to present evidence in support of pretrial motions in a timely manner. See Tr. of May 11, 1984, Hr'g at 48-49.

. Of course, the choice not to present any case in mitigation seems particularly unreasonable, given that Chason had nothing to lose.

. Similarly, although we rejected a Cronic claim despite a very short time to prepare in Chadwick v. Green, 740 F.2d 897, 901 (11th Cir.1984), we noted in that case that the historical facts were not in dispute and that defense counsel had made no effort to contact the psychiatrist or verify the petitioner's claims of insanity. In the case at hand, the historical facts were in dispute, and Conklin has shown that expert testimony would have bolstered his case.

. See, e.g., Gardner v. Florida, 430 U.S. 349, 358-59, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) ("[DJeath is a different kind of punishment from any other which may be imposed in this country ... From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action.”) (citations omitted).