IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 26, 2014

## JAMES FREDERICK HEGEL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sullivan County**
**No. C61217     Honorable R. Jerry Beck, Judge**

—————————

**No. E2013-01630-CCA-R3-PC - Filed May 19, 2014**

—————————

The Petitioner, James Frederick Hegel, appeals the post-conviction court's denial of relief from his convictions for rape of a child and incest. On appeal, the Petitioner argues that he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Matthew A. Spivey, Kingsport, Tennessee, for the Defendant-Appellant, James F. Hegel.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Barry Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This appeal stems from the Petitioner's sexual abuse of his stepson. The record reflects that the offenses occurred in November and December 2002. In June 2009, the Petitioner was indicted for two counts of rape of a child, two counts of aggravated sexual battery, and one count of incest. On June 25, 2009, a Sullivan County jury convicted the Petitioner of one count of a rape of a child and one count of incest, for which he received an effective sentence of 22 years. State v. James Frederick Hegel, No. E2010-00747-CCA-R3-CD, 2011 WL 3198188, at *13 (Tenn. Crim. App. July 27, 2011) (affirming conviction and sentence). The facts underlying his convictions provided, in pertinent part, as follows:

The then twelve-year-old victim testified that he was born on March 5, 1997, and that he knew the difference between the truth and a lie. In November and December 2002, the victim lived in an apartment in Tennessee with his mother and [the Petitioner]. The victim said the abuse started when [the Petitioner] told him that the victim's mother would not have sex with [the Petitioner] and that [the Petitioner] wanted to have sex with the victim. The victim said that [the Petitioner] "put his wiener up my butt and stuff, and made me rub his wiener and squeeze it and stuff," that [the Petitioner] "tried to make white suff come out of his wiener ... and stick it in my mouth," and that [the Petitioner] touched the victim's penis. The victim said that [the Petitioner] also "stuck his finger up my butt" and that [the Petitioner's] finger and penis were "really big and it really hurt." When asked what time of year the incidents occurred, the victim said, "Christmas I was four, around there. Yeah, four." The State asked the victim if the abuse also happened when he was five years old, and the victim said, "It was--in Christmas it was when I was four, when I was five." The victim acknowledged that the abuse happened near Thanksgiving and Christmas in 2002.

The victim testified that the abuse occurred in the bathroom after his mother went to bed. The [Petitioner] promised the victim money in exchange for the sexual acts and told the victim not to tell the victim's mother. The State asked the victim how often the abuse occurred, and the victim said, "It started with four at a day and then keep going, keep doing four, four, four, four at a day. . . . It was four things a day. It was my daily routine." He said the abuse continued until his mother left [the Petitioner]. The victim acknowledged that he had been in three mental hospitals, that he lied to the doctors and nurses at the hospitals, and that he lied to them in order to get his way and get what he wanted. The victim said that he began having nightmares when the abuse started, that he was still having nightmares, and that "I can't control it."

. . . .

The victim testified that the abuse started when he was in the first grade and that it "[m]ade me a miserable life." He said Camelot was the last mental hospital he was in, that he learned to tell the truth while he was in Camelot, and that he lied previously because "I was too afraid to tell the truth when I was little. Really I feel like I still am." He said that someone caught him engaged in a sexual act with another boy and that his mother found out about the act. He stated, "And that's when my mom figured out who taught [me]." He denied that he accused [the Petitioner] of sexually abusing him in order to

-2-

get out of trouble over the incident with the boy, and he acknowledged that his mother and the prosecutor helped him prepare to testify.

. . . .

Detective Adkins testified that she met with [the Petitioner] in Wilmington, North Carolina, on October 19, 2007, and that [the Petitioner] was not in custody. She said she explained the victim's allegations to [the Petitioner] and that he gave a statement. She read [the Petitioner's] written statement to the jury. The statement provides, in relevant part, as follows:

I have only put my penis in [the victim's] . . . butt one time. It was when we lived at Cabana Apts in Kingsport. I think it was in 2002, when [the victim] was 5 or 6 years old, probably in [k]indergarten. . . . The time I put my penis in [the victim's] butt was probably winter time because I soak in the bathtub in winter & I shower in the summer & warm weather. It had to be between the middle of 2001 & [Aug.] 8, 2003 because [that's] when we lived there. [The victim's mother] & I had gotten into an argument & I had been drinking. I drank often in Tennessee. I got in the bathtub to soak & [the victim] got in there with me. I have [e]rectile dysfunction & I've had it since I was 25 yrs old. I'm 38 now. I haven't been able to ejaculate in many years . . . . The warm water & him moving around made my penis start to get hard. It was so unusual for that to happen, it just felt good. I didn't plan on it, but with [the victim] sitting on my lap & my penis getting hard, I put it in his butt. [The victim] started moving around [on] my penis but I didn't put it all the way in. I only put it in part of the way & it didn't last any more than a minute--probably only 30 seconds. I realized it wasn't right so I stopped. . . .

There was one time I put my finger in [the victim's] butt. . . . [The victim] had been there at the campground & was filthy. I took him home and scrubbed him but I wasn't in the tub. It was [summer] right before we moved to N.C[.] (Summer, 2003). [The victim's] butt was raw so I stuck my finger in his butt to [c]lean him. My finger barely went in to the first digit if that far. It hurt him because his butt was raw. When I put my penis in [the victim's butt], it did not bleed. He said, "Oh" like it hurt,

-3-

but he didn't cry or anything. When my finger went in his butt, it was only like the nail part to clean him. I love [the victim] like a dad & I am not sexually attracted to him.

James Frederick Hegel, 2011 WL 3198188, at * 2-9. Based on the above proof, the jury convicted the Petitioner of rape of a child and incest.

On July 26, 2012, the Petitioner filed a pro se petition for post-conviction relief, raising multiple grounds of ineffective assistance of counsel. He was subsequently appointed counsel, and an amended petition was filed on his behalf on February 28, 2013.

At the June 13, 2013 post-conviction hearing, the Petitioner testified that he retained counsel in 2007 and that counsel remained on the case through the end of the Petitioner's trial. The Petitioner agreed that counsel kept him adequately informed of the developments in his case and kept in regular contact with him. The Petitioner testified that medical records of the victim, which he believed contained exculpatory evidence, were given to counsel a little over a week before trial. Counsel filed a motion to continue to allow sufficient time to review the materials but withdrew that motion prior to trial after "agree[ing]" with the court that he had enough time to review them. The Petitioner maintained that he never saw or reviewed the medical records personally, but he recalled discussing some of the materials with counsel.

The Petitioner testified that counsel failed to object to transcripts of a recorded phone conversation between the Petitioner and the victim being submitted to the jury during deliberation. The phone recording was played for the jury, and the jury was provided a transcript of the recording during trial, but the transcript was never made an exhibit. The Petitioner believed the submission of the transcript to the jury prejudiced him because the jury had "stuff that was not evidence back there to base their decision on." Further, the Petitioner asserted that there were errors in the transcript, but counsel never highlighted this fact for the jury.

The Petitioner also testified that counsel failed to raise the appropriate grounds in his motion for new trial, including issues related to the medical records and suppression of the Petitioner's statement to police. The Petitioner claimed that he never discussed the grounds for his motion for new trial with counsel, and that he "was hoping to raise some more grounds" that were not raised. On cross-examination, the Petitioner acknowledged that he gave a statement to police in which he admitted that he penetrated the victim's anus with his penis. He agreed that he was convicted on that count and was acquitted on the counts unrelated to his confession. He further agreed that he met with counsel numerous times prior to trial and counsel hired an investigator to aid in his defense.

-4-

Counsel testified that he received the victim's medical records on June 11 or June 12, 2009, about 10 days prior to trial. He filed a written motion for a continuance on June 12, 2009, but withdrew that motion after reviewing the records and discussing them with the Petitioner. Counsel believed that most of the information contained in the records was irrelevant and inadmissible in the Petitioner's trial. He explained, "[The Petitioner and I] went through these medical records; we talked about that; and we kind of knew what we were going to try to introduce at trial; and we withdrew the motion." Counsel testified that he provided everything to the Petitioner and that the Petitioner was able to review all of the medical records for himself, but stated that he highlighted things for the Petitioner that he thought were relevant. Counsel recalled seeing certain parts of the medical records and did not recall seeing other parts. Counsel agreed that he would "have rather had another month to look [at the records]" but believed he had "a good amount of time" to review them. Counsel discussed withdrawing the motion to continue with the Petitioner, and they both agreed to withdraw it.

Counsel recalled receiving the tape recorded phone conversation between the Petitioner and the victim and preparing a transcript of that recording to compare to the one prepared by the State. He explained that there were "slight" inconsistencies between the two, but "nothing that was . . . exculpatory that would further [the Petitioner's] case." Counsel testified that he reviewed the grounds raised in the motion for new trial with the Petitioner. He stated that he raised "very basic grounds" and did not know whether the failure to raise other grounds waived those grounds on appeal. He agreed that "looking back, [he] should have added other grounds" and stated "there's a lot of things I should have done."

On cross-examination, counsel reiterated that much of the information in the medical records would have been irrelevant and inadmissible in the Petitioner's trial and that he "was very careful about opening doors for the State." Counsel believed he was successful in bringing out the victim's history of lying during cross-examination and noted that the Petitioner was acquitted of three of the five counts in the indictment. Counsel testified that he and the Petitioner were in "consistent contact" and met almost every Saturday or Sunday in the weeks leading up to the trial.

Following the hearing, the post-conviction court made oral findings with regard to each ground raised by the Petitioner. The court noted that the "trial was entered into with [counsel] . . . facing a confession, a very detailed confession" by the Petitioner, and opined that the Petitioner's lengthy statement would be difficult for "any competent counsel to overcome." The court also noted that the Petitioner was acquitted on all counts not related to the Petitioner's confession. With regard to counsel's decision to withdraw the motion to continue, the court found that although counsel could not remember everything that he reviewed in the records, counsel "spent a lot of time on it; highlighted it; brought [the

Petitioner] into his office and went over things he thought were important. That's probably what most . . . [c]ompetent lawyers do." Regarding the transcripts of the recorded phone conversation, the court agreed that it was error for them to have been submitted to the jury during deliberations; however, the court concluded that the error was harmless in light of the other evidence at trial. Finally, with regard to the motion for new trial, the court reasoned that even if counsel had raised the additional issues, "it would have been fruitless." The court issued a written order denying relief on June 17, 2013.

It is from this order that the Petitioner now appeals.

**ANALYSIS**

On appeal, the Petitioner asserts that he received ineffective assistance of counsel based upon counsel's failure to (1) obtain a continuance in order to review the victim's medical records; (2) exclude a transcript of the recorded phone conversation between the Petitioner and the victim from the jury room; and (3) raise certain issues in the Petitioner's motion for new trial. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish by clear and convincing evidence that he received ineffective assistance of counsel. Upon our review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

The Petitioner first alleges that counsel was ineffective because he did not obtain a continuance in order to review the victim's medical records. In that regard, we note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based

upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

As correctly noted by the Petitioner in his brief, the constitutional right to assistance of counsel "encompasses the defendant's right to be represented by counsel who has had a reasonable opportunity to prepare a defense." See State v. Lamb, No. 03C01-9701-CR-00010, 1998 WL 103316, at *6 (Tenn. Crim. App. Feb. 20, 1998), perm. app. denied (Tenn. Nov. 2, 1998) (citing Avery v. Alabama, 308 U.S. 444, 446 (1940)); see also Twiford v. Peyton, 372 F.2d 670, 673 (4th Cir. 1967) ("Even after appointment of counsel, no matter how competent, counsel must be afforded a reasonable opportunity to investigate and prepare a case."). Whether counsel had an adequate opportunity to prepare is based upon the facts and circumstances in each case. Brown v. State, 553 S.W.2d 94, 96 (Tenn. Crim. App. 1977); see also Avery, 308 U.S. at 446.

Here, the record establishes that counsel received the 1000-plus pages of medical records about 10 days prior to trial and initially filed a motion to continue in order to review them. Several days later, counsel withdrew the motion, and the trial commenced as scheduled.[1] At the post-conviction hearing, counsel acknowledged that additional time to review the materials would have been beneficial but stated that he believed he had sufficient time to prepare. Counsel opined that other than a note indicating a prior sexual act between the victim and another boy, most of the information contained in the records was irrelevant and inadmissible in the Petitioner's trial. Counsel explained that he and the Petitioner "went through [the records and] . . . knew what we were going to try to introduce at trial; and we withdrew the [continuance] motion." Counsel reiterated several times that the decision to withdraw the motion was made after consulting with the Petitioner. Although the Petitioner testified that he did not review or discuss the materials with counsel, the post-conviction court accredited the testimony of counsel over that of the Petitioner, see Vaughn, 202 S.W.3d at 116, and concluded that the decision to withdraw the motion was made after thorough preparation and discussion with the Petitioner. See House, 44 S.W.3d at 515.

Moreover, as grounds for the need to have requested additional time to review the records, the Petitioner points to various excerpts from the medical records that trial counsel did not recall reviewing with the Petitioner including:(1) a comment apparently made by the

---

[1] We note that the Petitioner and counsel testified that a hearing was held on the motion to continue, during which the court expressed hesitation that a continuance was necessary to review the records. Counsel apparently agreed with the court and withdrew the motion. However, the motion to continue and the transcript from the hearing were not included in the record for our review. We glean the information about the motion and its withdrawal from the testimony at the post-conviction hearing.

Petitioner during treatment;[2] (2) hand drawn pictures by the Petitioner of his "saddest" and "scariest" moments; and (3) reference to a "clinical narrative" in which a counselor opined that "[biological] father seems to not believe that [victim's] history of abuse could be contributing to his present behavioral problems." However, the comments and pictures were not developed in any significant way at the post-conviction hearing, and we fail to see how they would have been relevant or admissible during the Petitioner's trial. Accordingly, the record does not preponderate against the findings of the post-conviction court. The petitioner has failed to show that he was prejudiced by trial counsel's failure to insist on a continuance; therefore, he is not entitled to relief.

The Petitioner also generally asserts that "counsel was unprepared with other discovery material." He argues that counsel failed to use a narrative police report, which documents the initial statements given by the victim and the victim's mother, during cross-examination of the testifying officer. He notes that the report does not include specific allegations of penile penetration of the victim's anus, and thus could have been an important impeachment tool. However, counsel was unaware that he had this report until the day of trial and failed to use it during cross-examination after reviewing it. The post-conviction court denied relief on this ground, stating that the "issue is vague and no prejudice has been shown."

Upon review of the record, we agree with the determination of the post-conviction court. As an initial matter, we note that the mere fact that counsel reviewed the report the day of trial and decided not to use it to impeach the testifying officer does not, without more, establish deficient performance by counsel. Indeed, counsel's testimony at the post-conviction hearing suggests that his choice was a tactical decision aimed at limiting additional testimony about other allegations of abuse not included in the indictment or the Petitioner's confession. Although the Petitioner notes that the victim previously testified to these additional incidents of abuse, counsel explained that he was "concerned about [] allowing the jury to keep hearing this same type of testimony . . . . [H]earing it over and over, that this was occurring." Based on this testimony, we cannot conclude that counsel's decision was based upon inadequate preparation such that it should not be afforded proper deference. House, 44 S.W.3d at 515.

_____

    [2] The first page of exhibit 8, which was sealed by the post-conviction court, is a handwritten list, entitled "Selected quotes of Stuff [victim] said (1920-2030)," including fourteen comments apparently made by the Petitioner. The comment relied upon during the post-conviction hearing was "I'm gonna call the cops & you'll go to jail[.]" As alluded to by trial counsel during the post-conviction hearing, we do not know when this comment was made or whether it referred to the instant offenses and the defendant.

-9-

Further, the post-conviction court concluded, and we agree, that the Petitioner failed to establish prejudice. The initial statement in the narrative report is vague and references multiple incidents of abuse. Although it does not specifically describe an incident of penile penetration of the victim's anus, it does reference general allegations of abuse that occurred in the bathtub. In light of the other evidence introduced at trial, including the Petitioner's detailed confession in which he admits to penile penetration of the victim's anus while in the bathtub, we are unpersuaded that counsel's decision to limit his use of the report prejudiced the Petitioner's defense.

The Petitioner next asserts that counsel rendered ineffective assistance of counsel by failing to exclude a transcript of the recorded phone conversation between the Petitioner and the victim from the jury room. The post-conviction court agreed that the submission of the transcripts to the jury during deliberation was error; however, the court concluded that the Petitioner failed to establish prejudice resulting from the error given the facts and circumstances of the case. Specifically, the court noted that the recording was played in open court and each member of the jury had a copy of the transcript during the trial. Additionally, the trial judge instructed the jury on at least two occasions about the limited purpose of the transcripts. Finally, the Petitioner provided a detailed confession of penile penetration, for which he was convicted. Accordingly, the court concluded that the Petitioner suffered no prejudice as a result of the submission of the transcripts to the jury during deliberation.

We agree that it was error to allow the transcripts of the recorded telephone conversation, which were not admitted into evidence, to be submitted to the jury during deliberation. See State v. Pickett, No. M2005-02434-CCA-R3-CD, 2007 WL 471136, at *11 (Tenn. Crim. App. Feb. 14, 2007) (noting that when transcripts are not admitted into evidence "the best practice would have been for the trial court not to allow the jury to take the transcript copies into the jury room"). However, we are not convinced that this error undermined the verdict in this case. Charles A. Walker v. State, No. M2010-00449-CCA-R3-PC, 2011 WL 795866, at *22 (Tenn. Crim. App. Mar. 8, 2011) (noting that, because the tape recording itself was made an exhibit and played for the jury, the Petitioner was unable to show that counsel's failure to object to submission of transcripts to the jury during deliberation was prejudicial). Additionally, as emphasized by the post-conviction court, the trial judge instructed the jury on multiple occasions about the limited purpose of the transcripts and emphasized that "the tape is evidence" and the transcript "is only a guide that may or may not assist you." Generally, we presume that a jury has followed the trial court's instructions. See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). Moreover, counsel testified that any inconsistencies between the transcript and the recording were "slight" and that he found no errors "that would further [the Petitioner's] case." Thus, without a contrary showing from the Petitioner, we agree with the post-

conviction court that viewed in light of the entire record, any alleged error by counsel did not result in prejudice to the Petitioner.

The Petitioner's final allegation of ineffective assistance of counsel stems from counsel's handling of the Petitioner's motion for new trial. The Petitioner alleges that counsel did not consult with him regarding the motion until the day of the hearing and that counsel failed to include several grounds for relief that the Petitioner believed should have been included. Specifically, he asserts that counsel should have raised issues related to the need for a continuance to review the victim's medical records and admission of the Petitioner's statement into evidence. He maintains that counsel's failure to raise additional grounds prejudiced his defense by "severely limit[ing]" the grounds that could be raised on appeal.

"It has long been the rule in this state that in order to preserve errors for appeal, the appellant must first bring the alleged errors to the attention of the trial court in a motion for new trial." Fahey v. Eldridge, 46 S.W.3d 138, 141 (Tenn. 2001); see also Tenn. R. App. P. 3(e) (requiring that issues be specifically raised in a timely motion for new trial to avoid waiver). Indeed, a defense counsel's complete failure to preserve and pursue available post-trial remedies can constitute performance so deficient that it becomes presumptively prejudicial. See Wallace v. State, 121 S.W.3d 652, 657 (Tenn. 2003) (presuming prejudice where counsel completely failed to file a motion for new trial, withdraw as counsel, or otherwise preserve the defendant's appellate remedies despite defendant's clear desire to pursue post-trial relief). However, like in the present case, where counsel files a motion for new trial but fails to raise certain issues, the defendant must prove "actual prejudice" in order to be entitled to relief. See State v. Kenneth S. Griffin, No. E2000-02471-CCA-R3-CD, 2001 WL 710178 (Tenn. Crim. App. June 25, 2001) (requiring proof of "actual prejudice" where counsel filed a motion for new trial but failed to include certain issues).

Here, the post-conviction court concluded, and we agree, that regardless of any deficiency by counsel, the Petitioner failed to establish prejudice because neither issue now raised by the Petitioner would entitle him to relief. With regard to the Petitioner's statement, the post-conviction court reviewed the transcript of the suppression hearing and concluded that the statement was properly admitted at trial. The Petitioner provided no testimony or evidence to support his contention that the statement should have been excluded. Thus, like the post-conviction court, we conclude that counsel's failure to include it as an issue in the motion for new trial did not cause actual prejudice to the Petitioner. Likewise, with regard to the motion to continue, there is nothing in the record to suggest that the motion was improperly denied by the court. To the contrary, both counsel and the Petitioner testified that the motion was voluntarily withdrawn prior to trial. Thus, failure to include this issue in the

-11-

motion for new trial caused no prejudice to the Petitioner. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE