# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                        NEWS RELEASE #012

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **13th day of March, 2018**, are as follows:

**PER CURIAM**:

2016-KP-1285      STATE OF LOUISIANA v. LANDON D. QUINN (Parish of Orleans)

Here, the eyewitness identified relator from a photographic lineup and testified at two trials. At all times, the eyewitness was adamant that relator was the shooter. He highlighted relator's eyes, eyebrows, nose, and high cheekbones as the distinctive characteristics leading to his identification. He correctly told the police that they would find no shell casings. The surveillance footage from a nearby business also confirmed the eyewitness's account that the shooter ran up with his head and lower face obscured by a white t-shirt, leaving the neck hole to expose the portion of the shooter's face the eyewitness described. It is also significant that the affidavit does not indicate that the eyewitness said the person in the booking photo was not the shooter; the eyewitness simply indicated that the shooter had shorter hair.

Finally, we note that a person with short twists in his hair appears on the surveillance video, and relator had short twists in his hair when arrested 24-48 hours after the shootings. While the affidavit may call into question the eyewitness's ability to accurately discern the style of hair beneath a t-shirt worn over it, the likelihood of a different result if that information had been used at trial appears conceivable but not substantial, and is insufficient to undermine confidence in the outcome of the second trial. Therefore, we reverse the district court's ruling that granted relator a new trial and we reinstate relator's convictions and sentences.

REVERSED.

JOHNSON, C.J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2016-KP-1285

STATE OF LOUISIANA

VERSUS

LANDON D. QUINN

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

PER CURIAM

After the jury could not reach a verdict in relator's first trial, the jury in relator's second trial found him guilty of two counts of second degree murder in connection with the 2009 shooting deaths of Matthew Miller and Ryan McKinley. On the night of the shooting, an eyewitness told police that they would not find any shell casings because the shooter used a revolver. The following day, the eyewitness identified relator as the shooter from a photographic lineup. The eyewitness testified at both trials and unequivocally identified relator as the shooter.

The convictions were affirmed on appeal. *State v. Quinn*, 12-0689 (La. App. 4 Cir. 8/21/13), 123 So.3d 320, *writ denied*, 13-2193 (La. 3/14/14), 134 So.3d 1195. After direct review was completed, relator sought post-conviction relief on the ground that, inter alia, counsel rendered ineffective assistance at the second trial by failing to utilize a statement obtained from the eyewitness by a defense investigator. Specifically, the eyewitness told the defense investigator that the shooter's hair was shorter than that depicted in a booking photograph taken at the

time of relator's arrest around 24–48 hours after the shootings. The defense investigator memorialized his interview with the eyewitness in an affidavit that was provided to counsel, who represented relator in his second trial but did not utilize the affidavit or call the investigator to testify.

The district court granted relator a new trial after conducting an evidentiary hearing. The district court found that counsel at relator's second trial were in possession of the affidavit and that the defense investigator would have made a compelling witness who could have challenged the strength of the eyewitness identification. The court of appeal denied the state's writ application. *State v. Quinn*, 16-0150 (La. App. 4 Cir. 6/10/16) (unpub'd). The court of appeal found that the affidavit "strongly suggests that the defendant was mistakenly identified as the perpetrator." *Quinn*, 16-0150, p. 2. For the following reasons, we find that the courts below erred in those determinations.

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012). The United States Supreme Court has long recognized that the right to counsel is the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (citing *Reece v. Georgia*, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). Claims of ineffective assistance of counsel are generally governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this Court in *State v. Washington*, 491

So.2d 1337, 1339 (La. 7/18/86).

To prevail on such a claim, a defendant must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064 The Supreme Court further noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment." *Id.*, 466 U.S. at 691, 104 S.Ct. at 2066. Additionally, the Court reasoned "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*, 466 U.S. at 691–92, 104 S.Ct. at 2067. Thus, the *Strickland* court held that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2066. The court further explained that in making a determination of ineffectiveness of counsel, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*, 466 U.S. at 696, 104 S.Ct. at 2053–54.

At the heart of the present case is a purported difference in relator's hairstyle as it appeared at the time of the shootings and 24–48 hours later at the time of his arrest. Notably, a t-shirt over the shooter's head concealed his hair and the lower

3

portion of his face at the time of he shootings. The eyewitness, however, indicated that he recognized relator by his nose, eyes, and cheekbones, which were exposed through the neck hole of the shirt. He also indicated that he could perceive beneath the covering that relator's hair was short and tight to his head. In a booking photograph taken 24–48 hours after the shootings, however, relator's hair had short twists. Relator contends counsel's failure to use this discrepancy to impeach the eyewitness's credibility constituted ineffective assistance. Under the circumstances presented here, we disagree with relator's contention.

The first trial began on July 29, 2010. The eyewitness testified that he was in his truck talking on the phone when he saw two white males walking in the area. After the males walked past his vehicle, the eyewitness saw someone else "run up the street real quick" and point a gun at the men. He described that this person— the shooter—had a t-shirt covering his head like a mask, with the shirt covering "the top part of the head, and down, and across like the top part of his mouth." The shooter's cheeks, eyes, and nose were exposed through the neck hole, and he approached from the same direction that the two males had been walking. The eyewitness unequivocally identified relator as the shooter. In describing his lineup identification, the eyewitness stated that what stood out were relator's nose, high cheekbones, and eyes. On cross-examination, defense counsel asked the eyewitness whether relator had the same hairstyle then as he had at trial, to which he replied, "No, he did not." On redirect, the state asked the eyewitness what relator's hairstyle looked like during the shooting. The eyewitness stated that he could tell relator had a short hairstyle because the t-shirt was pulled tight and the lighting was good where the incident occurred. As noted above, the jury was unable to reach a verdict in the first trial.

Relator was retried on June 14, 2011. The eyewitness testified similarly at

4

the second trial as he had at the first. He again identified relator as the shooter and described the neck part of the t-shirt as exposing his eyes, cheeks, and nose. On cross-examination, he stated that the shirt "went across the top part of [the shooter's] mouth," and he agreed with defense counsel that he would have seen "essentially above the upper lip to the forehead." Defense counsel also elicited testimony wherein the eyewitness admitted his own criminal history. On redirect, the eyewitness again stated that the distinctive characteristics of relator's face were "[h]is cheekbones, his nose, his eyes, his eyebrows." Neither the state nor defense questioned the eyewitness about the shooter's hairstyle at this trial. Before resting, the state introduced video footage and still photographs from a public crime camera located outside the convenience store the victims visited immediately before the shootings. The state contended this evidence showed relator lurking outside the store just before the shooting. This evidence was not presented to the jury in the first trial. Notably, the person depicted on the crime camera wore his hair in short twists.

There appears to be little dispute that counsel had received the affidavit and should have been aware of its content. Although the state speculates as to why counsel might have strategically decided not to utilize the affidavit or call the defense investigator to testify, it is clear that the affidavit was relevant to the eyewitness identification and no error is apparent in the district court's determination that counsel erred under *Strickland*'s first prong in not utilizing this information. It is not as readily apparent, however, that there is a substantial likelihood of a different outcome, as required under *Strickland*'s second prong, if counsel had used this information. The United States Supreme Court cautioned in *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) as follows:

5

In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Richter*, 562 U.S. at 111–12, 131 S.Ct. at 791–92 (internal citations and quotation marks omitted).

Here, the eyewitness identified relator from a photographic lineup and testified at two trials. At all times, the eyewitness was adamant that relator was the shooter. He highlighted relator's eyes, eyebrows, nose, and high cheekbones as the distinctive characteristics leading to his identification. He correctly told the police that they would find no shell casings. The surveillance footage from a nearby business also confirmed the eyewitness's account that the shooter ran up with his head and lower face obscured by a white t-shirt, leaving the neck hole to expose the portion of the shooter's face the eyewitness described. It is also significant that the affidavit does not indicate that the eyewitness said the person in the booking photo was not the shooter; the eyewitness simply indicated that the shooter had shorter hair.

Finally, we note that a person with short twists in his hair appears on the surveillance video, and relator had short twists in his hair when arrested 24–48 hours after the shootings. While the affidavit may call into question the eyewitness's ability to accurately discern the style of hair beneath a t-shirt worn over it, the likelihood of a different result if that information had been used at trial appears conceivable but not substantial, and is insufficient to undermine confidence in the outcome of the second trial. Therefore, we reverse the district

6

court's ruling that granted relator a new trial and we reinstate relator's convictions and sentences.

**REVERSED**

**SUPREME COURT OF LOUISIANA**

**No. 2016-KP-1285**

**STATE OF LOUISIANA**

**VERSUS**

**LANDON D. QUINN**

**ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**JOHNSON, C.J. dissents and assigns reasons.**

I cannot find the district court abused its discretion in granting the defendant's application for post-conviction relief and ordering a new trial. In my view, defense counsel failed to investigate, research, or properly prepare defendant's case in light of the obvious problems with the identification of defendant as the perpetrator. Thus, I would affirm the ruling of the district court granting defendant a new trial.